UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                              Case No.: 17-21018-LMI

Aleida C. Nunez,                                    Chapter 13

      Debtor.
_____/

## NOTICE OF FILING OF CASE LAW REFERENCED IN DEBTOR'S AMENDED RESPONSE IN OPPOSITION TO CREDITOR'S OBJECTION TO CONFIRMATION

**COMES NOW** the Debtor, Aleida C. Nunez, and files the following case law: *Smith v. Reverse Mortgage Solutions, Inc.*, 200 So.3d 221 (Fla. App., 2016) and *Edwards v. Reverse Mortgage Solutions, Inc.*, 187 So.3d 895 (Fla. App., 2016).

                                  Respectfully submitted,

By:_____
FREIRE & GONZALEZ, P.A.
Attorneys for Debtor(s)
[ ] Edward Freire, Esq. FBN: 0813771
[ ] Laila S. Gonzalez, Esq. FBN: 0975291
[X] Gianny Blanco, Esq., FBN:0078080
10647 N. Kendall Dr.
Miami, FL 33176
Tel: (305) 826-1774
Fax: (305) 826-1794
courtdoc@fgbkc.com

Case 17-21018-LMI Doc 44 Filed 01/08/18 Page 2 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

200 So.3d 221

Celia Elmira SMITH, Appellant,
v.
REVERSE MORTGAGE SOLUTIONS, INC., etc., Appellee.

No. 3D13–2261.

District Court of Appeal of Florida, Third District.

Sept. 21, 2016.

Kronhaus Law Firm, P.A., and Julie W. Kronhaus, Winter Park; Andrew D. Tarr, P.A., and Andrew D. Tarr, for appellant.

Marinosci Law Group, P.C., and Bart Heffernan, Ft. Lauderdale; Akerman LLP, and Nancy M. Wallace, Tallahassee, William P. Heller, Fort Lauderdale, and Kathryn B. Hoeck, Orlando, for appellee.

Before SHEPHERD, ROTHENBERG and SCALES, JJ.

*On Motion for Rehearing*

SCALES, J.

We deny Reverse Mortgage Solutions's motion for rehearing. We withdraw our prior opinion of July 15, 2015, and substitute the following opinion for that previously issued.

Celia Smith ("Mrs. Smith"), who was the defendant below, appeals from a Final Judgment of Foreclosure arising out of a home equity conversion mortgage signed and executed in May of 2008, by Mrs. Smith and her now deceased husband, Kenneth Smith ("Mr.Smith"). Because Reverse Mortgage Solutions, the plaintiff below and appellee here, failed to establish the occurrence of a condition precedent to its right to foreclose, we reverse.

I. Facts

On May 8, 2008, while Mr. and Mrs. Smith were married, Mr. Smith signed and executed an adjustable rate note secured by a home equity conversion mortgage, or what is commonly referred to as a "reverse mortgage." A reverse mortgage allows elderly homeowners to receive monthly payments from a lender based upon the

[200 So.3d 223]

homeowners' equity in their principal residence. Instead of the more conventional mortgage arrangement—where the borrower receives a lump sum from a lender, and then repays the lender over time with monthly payments—generally, in a reverse mortgage arrangement, the lender makes monthly payments to the elderly homeowners, and the homeowners' obligation to repay the lender ripens only upon the homeowners' death or when the homeowners move from their home. *See, e.g., Bennett v. Donovan,* 703 F.3d 582, 584–85 (D.C.Cir.2013).

The reverse mortgage at issue here encumbered the residential property where Mr. and Mrs. Smith lived together as their principal residence. Mrs. Smith executed the mortgage, but she did not sign the promissory note.[1]

Following Mr. Smith's death in December 2009, Reverse Mortgage Solutions filed a verified complaint for foreclosure of the reverse mortgage, alleging that Mr. Smith was the "sole borrower under the note and mortgage" and that his death triggered the acceleration clause under the mortgage agreement. No other ground for acceleration was alleged.

The verified complaint alleged that: (i) $229,475 was due under the note and mortgage, plus interest; (ii) all conditions precedent to the acceleration of the note, and to foreclose on the mortgage, had been fulfilled or had occurred; and (iii) Mrs. Smith owned the property.[2] Mrs. Smith's answer



Case 17-21018-LMI Doc 44 Filed 01/08/18 Page 3 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

denied the complaint's condition precedent allegations, and specifically pled: "This mortgage should not be accelerated as the Defendant [Mrs. Smith] is still alive and living in the real property as her homestead."

Following a bench trial, the trial court entered a form final judgment of foreclosure in favor of Reverse Mortgage Solutions in the amount of $248,403.59, foreclosing on Mrs. Smith's interest in the property and setting a September 2013 foreclosure sale date. The final judgment contains no specific findings of fact or other adjudications with regard to whether all conditions precedent had occurred.

Mrs. Smith appeals the trial court's Final Judgment of Foreclosure, contending that acceleration of the mortgage is inappropriate under both the express provisions of the mortgage document and the federal statute governing the insurability of reverse mortgages by the U.S. Department of Housing and Urban Development (HUD).[3] Essentially, Mrs. Smith argues that she is a co-borrower under the mortgage, which prohibits foreclosure until she either dies or no longer maintains the property as her principal residence.

We conclude that Mrs. Smith is a co-borrower as contemplated in the mortgage

[200 So.3d 224]

and, therefore, a condition precedent to Reverse Mortgage Solutions's right to foreclose (*to wit,* Mrs. Smith's death) has not occurred. Thus, we remand for a new trial to allow the trial court to adjudicate specifically whether the other condition precedent to Reverse Mortgage Solutions's right to foreclose has occurred, i.e., whether the encumbered real property was Mrs. Smith's principal residence as of the date of the trial.

## II. Analysis

### A. *Issue Before the Court*

The issue before this Court is whether the trial court erred in its implicit determination that all conditions precedent to Reverse Mortgage Solutions's entitlement to foreclosure had occurred. Specifically, we must determine whether, as a matter of law, Mrs. Smith is a "Borrower" as that term is used in the mortgage. If Mrs. Smith is a "Borrower," either her death or her ceasing to use the subject property as her principal residence is a condition precedent to Reverse Mortgage Solutions's right to foreclose the mortgage.

### B. *Standard of Review*

We first note that, consistent with the dictates of *Applegate v. Barnett Bank of Tallahassee,* 377 So.2d 1150 (Fla.1979), and its progeny, the burden is on Mrs. Smith as the appellant to demonstrate error by providing this Court with an adequate record of the proceedings below, and, without such a record, affirmance is normally required. When, as here, the issue presented involves a pure question of law (i.e., judicial construction of the reverse mortgage to determine whether Mrs. Smith is a "Borrower" as defined in the reverse mortgage), and the error of law appears on the face of the final judgment,[4] the absence of a transcript does not prevent reversal. *See BarrNunn, LLC v. Talmer Bank & Trust,* 106 So.3d 51, 52 (Fla. 2d DCA 2013) ("[T]he absence of a transcript does not preclude reversal where an error of law is apparent on the face of the judgment[.]") (quoting *Chirino v. Chirino,* 710 So.2d 696, 697 (Fla. 2d DCA 1998) ).

Normally, in a case such as this, the issue before this Court simply would be whether the trial court's conclusion (subsumed in the final judgment)—that all conditions precedent to the plaintiff's entitlement to foreclosure have occurred—is supported by competent substantial evidence. *See Verneret v. Foreclosure Advisors, LLC,* 45 So.3d 889, 891



Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 4 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

(Fla. 3d DCA 2010) ("Findings of fact by a trial judge in a nonjury proceeding will not be set aside on review unless totally unsupported by competent and substantial evidence."). In this case, however, the trial court's entry of the Final Judgment of Foreclosure hinged not on weighing any trial evidence, but, rather, upon an interpretation of the reverse mortgage. The trial court found that all conditions precedent had occurred based upon its legal conclusion that Mrs. Smith was not a "Borrower" under the mortgage.

A trial court's construction of notes and mortgages involves pure questions of law, and therefore is subject to de novo review. *Nagel v. Cronebaugh*, 782 So.2d 436, 439 (Fla. 5th DCA 2001) (determining that general contract principles governed the trial court's interpretation of the promissory note; thus, the appropriate standard of review was de novo). We, therefore,

[200 So.3d 225]

review the trial court's construction of the reverse mortgage de novo.

C. *Condition Precedent to Foreclosure*

It is axiomatic that in a mortgage foreclosure action a plaintiff must plead and prove the occurrence of all conditions precedent. *See Konsulian v. Busey Bank, N.A.*, 61 So.3d 1283, 1285 (Fla. 2d DCA 2011).

Consistent with the requisites of 12 U.S.C. § 1715z–20(j)[5] governing reverse mortgages insured by HUD, the subject mortgage contains plain language expressly conditioning the lender's acceleration and foreclosure rights on the death of any "Borrower" whose principal residence is the property encumbered by the mortgage. Because the parties stipulate that Mrs. Smith has not died, and because Mr. Smith's death is the sole ground alleged for Reverse Mortgage Solutions's acceleration and foreclosure, if Mrs. Smith is a "Borrower" under the mortgage, then a condition precedent to the lender's right to foreclose has not occurred, thereby precluding the lender's foreclosure action.

D. *Analysis of Relevant Mortgage Language—Mrs. Smith's Status as a "Borrower"*

We begin our analysis of whether Mrs. Smith is a "Borrower" by looking at the language of the mortgage.[6] The first paragraph of the mortgage begins by identifying Mr. Smith as "a married man" and the mortgagor, which it thereafter refers to as the "Borrower."

The mortgage's fourth paragraph contains the Borrower Covenant,[7] whereby "the Borrower" acknowledges and covenants to the mortgagee that: (i) the Borrower owns the property; (ii) the Borrower has the right to mortgage, grant, and convey the property; and (iii) the property is otherwise unencumbered. The Borrower Covenant also requires the Borrower to defend the title to the property.

The final portion of the mortgage plainly indicates that: (1) **both** Mr. and Mrs. Smith are the "Borrower" under the mortgage; (2) **both** Mr. and Mrs. Smith signed the mortgage as the "Borrower"; and (3) **both** Mr. and Mrs. Smith's signatures were verified jointly by two witnesses and one notary jurat.

[200 So.3d 226]

Specifically, immediately before the witnesses's signatures, the mortgage states the following: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it." Below this statement, both Mr. Smith's and Mrs. Smith's signatures appear. Mrs. Smith's signature was no accident as her name was pre-printed on the document below the line she was required to sign.



-3-

Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 5 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

Paragraph 9 of the mortgage contains the condition precedent required in such reverse mortgages by virtue of 12 U.S.C. § 1715z–20(j). This provision specifically provides: "Lender may require immediate payment in full of all sums secured by this Security Instrument if: (i) **A Borrower dies and the Property is not the principal residence of at least one surviving Borrower [.]**" (emphasis added).

Thus, based on the plain and unambiguous language of the mortgage—which was executed by both Mr. and Mrs. Smith—(i) **both** Mr. and Mrs. Smith were treated as the "Borrower" under the mortgage, and (ii) **each** borrower is protected from the foreclosure of the mortgage until both borrowers die.

Hence, this Court's determination that Mrs. Smith is a co-borrower—and, therefore, that her death is a condition precedent to Reverse Mortgage Solutions' ability to foreclose—could end here.

E. *Conclusion Consistent With Florida's Homestead Provisions*

Our conclusion that Mrs. Smith is a "Borrower" under the mortgage is also supported by the reference to Mr. Smith as a "married man" in the mortgage's opening paragraph, coupled with the provision of the Borrower Covenant whereby "Borrower" expressly covenants that "Borrower" has the right to mortgage, grant, and convey the property.

Florida's Constitution requires Mrs. Smith's signature on the mortgage to effectuate the lender's security interest in homestead property. Art. X, § 4(c), Fla. Const. ("The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage ...."); *see Pitts v. Pastore*, 561 So.2d 297, 301 (Fla. 2d DCA 1990) (holding that a mortgage is ineffectual as a lien until such time as either the spouse joins in the alienation or the property loses its homestead status). Additionally, because Mr. Smith was married to Mrs. Smith at the time the mortgage was executed, only a deed containing Mrs. Smith's signature could convey with validity her interest in the property. *Id.*

Therefore, only if Mrs. Smith is a "Borrower" would this portion of the Borrower Covenant be accurate; Mr. Smith, acting alone, did not "have the right" to either encumber or convey both his and Mrs. Smith's interest in the couple's homestead property.[8]

Plainly, Reverse Mortgage Solutions intended for the Borrower Covenant to confirm the mortgage's validity and enforceability by having "Borrower" warrant its capacity and ability to encumber and convey the property. Under Florida's constitutional homestead provisions, this goal is achieved only if Mrs. Smith is a "Borrower."

F. *Application of Federal Reverse Mortgage Law*

Even more persuasive to our determination is the application of relevant provisions

[200 So.3d 227]

of federal law related to reverse mortgages.[9]

At oral argument, the parties conceded that the subject mortgage was, indeed, a "home equity conversion mortgage" issued by Reverse Mortgage Solutions and insured by HUD, pursuant to 12 U.S.C. § 1715z–20.[10] 12 U.S.C. § 1715z–20(j) is titled "[s]afeguard to prevent displacement of homeowner" and provides, in relevant part:

> The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the **homeowner's** obligation to satisfy the loan obligation is deferred until the



Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 6 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

> **homeowner's** death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. (emphasis added)

This provision goes on to expressly define the term "homeowner" as including the spouse of the homeowner: "For purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner." *Id.*

While the plain language of the statute imposes an obligation only on the Secretary of HUD with regard to provisions that must be contained in reverse mortgages insured by HUD, it is undisputed that the subject mortgage is, indeed, a reverse mortgage insured by HUD. We are compelled to construe a contract consistent with specific statutes that regulate and govern the contract. *See Westside EKG Assocs. v. Found. Health*, 932 So.2d 214, 216 (Fla. 4th DCA 2005) ; *see also S. Crane Rentals, Inc. v. City of Gainesville*, 429 So.2d 771, 773 (Fla. 1st DCA 1983) ("The laws which exist at the time and place of the making of a contract enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including those laws which affect its construction, validity, enforcement or discharge.").

The explicit purpose of 12 U.S.C. § 1715z–20(j) is to provide a safeguard against the displacement of elderly homeowners. The statute would be without effect if a mortgagee were permitted to foreclose on a mortgage while a "homeowner," as that term is expressly defined in the statute, maintains the subject property as his or her principal residence. This is true especially when, as here, the "homeowner" executed the very mortgage giving the mortgagee a security interest in the subject property.

Our interpretation of the subject reverse mortgage is made rather easy in light of Congress's clear intent to protect from foreclosure a reverse mortgagor's surviving spouse who is maintaining the encumbered property as his or her principal residence.

[200 So.3d 228]

[11] The subject reverse mortgage is insured by HUD pursuant to a Congressionally prescribed scheme that **expressly requires** deferment of the obligation to satisfy the loan secured by such mortgages until the death of the borrower **and any spouse of the borrower.**

G. *Summary*

Against the backdrop of this unambiguous Congressional mandate, it would be difficult, if not impossible, for us to construe Mrs. Smith as anything other than a "Borrower" for the purposes of Paragraph 9's express conditions precedent. Our conclusion is reinforced by Mrs. Smith having executed the subject mortgage before a notary and two witnesses—over her pre-printed name on the subject mortgage—under a heading that reads, "BY SIGNING BELOW, **Borrower** accepts and agrees to the terms and covenants contained ...." in the mortgage (emphasis added). Our conclusion is further reinforced by the express provisions of the mortgage's Borrower Covenant, as well as Florida's constitutional requirement that the reverse mortgage could not have encumbered Mrs. Smith's interest in the subject property absent her signature. Art. X, § 4(c), Fla. Const.

### III. Conclusion

In light of the foregoing, we conclude that, as a pure question of law, Mrs. Smith was a "Borrower" as that term is contemplated in Paragraph 9 (Grounds for Acceleration of Debt) of the subject reverse mortgage. Therefore, pursuant to Paragraph 9, as a condition precedent to its entitlement to foreclosure, Reverse Mortgage Solutions was required to establish either that: (i) Mrs.



Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 7 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

Smith had died, or, (ii) as of August 5, 2013 (the date of trial), the property was no longer Mrs. Smith's principal residence. Reverse Mortgage Solutions pleaded neither occurrence.

Reversed and remanded for entry of judgment in favor of Mrs. Smith.[12]

ROTHENBERG, J., concurs.

SHEPHERD, J., dissenting.

The labor expended by the majority to keep Kenneth Smith's widow in her home is admirable. Unfortunately, the legal analysis used does not measure up. For this reason, I respectfully dissent.

I.

The central issue in this case is whether there was a default under the mortgage, authorizing Reverse Mortgage Solutions, Inc., to foreclose. Reverse Mortgage Solutions asserts there was a default under Paragraph 9(a)(i) of the mortgage. This paragraph reads as follows:

[200 So.3d 229]

> **9. Grounds for Acceleration of Debt.**
>
> **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
>
> (i) A Borrower dies and <u>the Property is not the principal residence of at least one surviving borrower</u>, or ...

(underline emphasis added).

The applicable acceleration clause in the mortgage is triggered when: (1) a Borrower dies; (2) there is a "surviving borrower;" and (3) the property is not the residence of a surviving borrower. It was Reverse Mortgage Solution's burden at trial to prove the existence of the default. The Court has not been provided with a transcript of the trial, and the form Final Judgment of Foreclosure includes no findings of fact. It merely states, "On the evidence presented, IT IS ORDERED AND ADJUDGED that Plaintiff's Final Judgment of Foreclosure is GRANTED." The trial court may have reasoned in one of two ways: (1) Final Judgment of Foreclosure was warranted because Celia Smith is **not** a "Borrower" under the mortgage; or (2) Celia Smith **was** a "Borrower," but a Final Judgment of Foreclosure was nevertheless warranted because by the date of the trial, the home was no longer her "principal residence." The majority grounds its reversal of the Final Judgment of Foreclosure in this case on its belief that "The trial court found that all conditions precedent had occurred based upon its legal conclusion that Mrs. Smith was not a 'Borrower' under the mortgage." Maj. Op. at p. 224. There is no record support for the statement. The Court may as well have reasoned that Celia Smith was a "Borrower" but no longer made the home her "principal residence."[13]

This case should be affirmed on the strength of *Applegate v. Barnett Bank of Tallahassee*, 377 So.2d 1150 (Fla.1979). As the Florida Supreme Court explained, "Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or **an alternative theory supports it.** " *Applegate*, 377 So.2d at 1152 (emphasis added). I do not believe Celia Smith was a "Borrower," as will be demonstrated below, but even if she was, the record of proceedings may have included an alternate ground for affirmance if one had been brought to us. We should affirm the Final Judgment of Foreclosure in this case for lack of a complete record.

II.



Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 8 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

If it is necessary to join issue on the question of whether or not Celia Smith is a "Borrower" under the mortgage document, I conclude she is not. The mortgage document in this case is a home equity conversion

[200 So.3d 230]

mortgage, insured by the United States Department of Housing and Urban Development Home Equity Conversion Mortgage (HECM) Program for Elderly Homeowners, under 12 U.S.C.A. § 1715z–20. The mortgage and associated promissory note are HECM form contract documents which follow the statute. The face of the mortgage identifies the decedent, Kenneth Smith, and no other person, as the "Borrower":

**State of Florida**

**ADJUSTABLE RATE**

**HOME EQUITY CONVERSION MORTGAGE**

> THIS MORTGAGE ("Security Instrument") is given on **May 08, 2008. The mortgagor is KENNETH S. SMITH, A MARRIED MAN,** whose address is **9991 SW 154TH AVENUE, MIAMI, FL 33196** ("Borrower").... The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note ... up to a maximum principal amount **Five Hundred Forty–Four Thousand One Hundred Eighty–Five and 00/100 Dollars ($544,185.00).** ... The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on **September 07, 2086.** For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in **MIAMI–DADE** county, Florida:
>
> The real property located at 9991 SW 154th Avenue, Miami, FL, in the County of Miami Dade, state of FL, described more fully on Exhibit A attached to this mortgage.

(underline emphasis added).

The majority counters that Celia Smith must be a "Borrower" under the mortgage because she signed it. The signature block, found on the last page of the mortgage document, does indeed bear Celia Smith's signature. It reads as follows:

> BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
>
> Witness:                        /s/
>
> /s/
>
> Signature:
>
> _____
> _____
> _____
> _____
>
> /s/   Kenneth   S.   Smith
>
> /s/        Celia        Smith



-7-

Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 9 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

**CELIA SMITH**

However, there is nothing in the signature block (or elsewhere in the mortgage document) that indicates Celia Smith signed the document as a "Borrower." In fact, the language of the signature block continues to reference a single "Borrower," just as does the opening paragraph of the mortgage quoted above.[14]

[200 So.3d 231]

The only argument the majority offers to the contrary is its statement that "Mrs. Smith's signature was no accident" because "it was pre-printed on the document below the line she was required to sign." All can concede that her signature on the document was arranged with forethought and was not an accident. However, that just begs the question of the purpose of the drafters in requiring her signature.

The majority recognizes that a necessary purpose for the signature is that the mortgage would have been unenforceable absent Celia's joinder in the document. *See* Art. X, § 4(c), Fla. Const. ("The owner of homestead real estate, joined by the spouse if married, may alienate homestead by mortgage, sale, deed or gift ..."); *Pitts v. Pastore*, 561 So.2d 297, 301 (Fla. 2d DCA 1990) (holding that a mortgage is ineffectual as a lien until such time as either the spouse joins in the alienation or the property loses its homestead status.). This imputation of purpose for Celia Smith's signature is harmonious with the evident intent of the drafters in the first paragraph of the mortgage document. The additional imputation, interpretively imposed on the mortgage document by the majority, conflicts with the unambiguous definition and identity of the "Borrower" in the first paragraph of the document. It is a basic principle of statutory and contractual interpretation that where one interpretation of a statute or contract appears to conflict with another, the courts will choose an interpretation which harmonizes the conflicting interpretations wherever possible. *See Homestead v. Johnson*, 760 So.2d 80, 84 (Fla.2000) ("[W]e rely upon the rule of construction requiring courts to read provisions of a **contract harmoniously** in order to give effect to all portions thereof."); *see also Triple E Dev. Co. v. Floridagold Citrus Corp.*, 51 So.2d 435, 438–39 (Fla.1951) ("[I]f clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible; if one interpretation would lead to an absurd conclusion, then such interpretation should be abandoned and the one adopted which would accord with reason and probability"). We should do so in this case.

The conclusion reached by the majority that Celia Smith is a "Borrower" on the mortgage is also counter to the express terms of the promissory note. The promissory note defines the "Borrower" as meaning "each person signing at the end of this Note." The only person who signed the promissory note was the decedent, Kenneth Smith. Moreover, the promissory note contains substantially identical acceleration language to that found in the mortgage document. Paragraph 7 of the promissory note reads as follows in relevant part:

> **7. IMMEDIATE PAYMENT IN FULL**
>
> (A) Death or Sale
>
> Lender may require immediate payment in full of all outstanding principal and accrued interest if:
>
> (i) A Borrower dies and <u>the Property is not the principal residence of at least one surviving borrower</u>, or ...



-8-

Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 10 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

(underline emphasis added). The decision of the majority creates the anomalous result that the "Borrower"—expressly defined in two simultaneously executed and related documents to be Kenneth Smith—now has **two** meanings. Although I am

[200 So.3d 232]

unwilling to place my total confidence in the federal drafters of these financial instruments (see Part III, infra), I do give them more credit than does the majority in their ability to use the same word, in the same fashion, at the same time, in the same transaction.

Finally, the use of a single-borrower reverse mortgage vehicle by a married couple is not ipso facto nefarious. The calculation of the amount that can be borrowed and the size of the resulting line of credit, lump sum, or periodic payment available to the borrower varies with the age of the borrower. *See Plunkett v. Castro*, 67 F.Supp.3d 1 (D.D.C.2014) (explaining why an older borrower will almost always be able to receive a bigger loan amount). One might envision many circumstances—e.g., the need for a significant, large lump sum to apply to a medical emergency—where a married couple might find a single-borrower reverse mortgage to be appropriate for their needs. By its decision today, the majority imposes its own collectivistic view of life planning on a cadre of seniors who have demonstrated they are capable of amassing wealth and governing their own affairs. We should allow the citizenry to be their own deciders.

III.

The final question is whether the fact that the mortgage in this case is insured under the federal Home Equity Conversion Mortgage Program for Elderly Homeowners compels a contrary conclusion. The majority is of two minds on the question. The majority first agrees that "the plain language of the statute imposes an obligation **only** on the Secretary of HUD [15] with regard to the provisions that must be contained in reverse mortgages insured by HUD" but in the next breath incorporates section 12 U.S.C.A. § 1715z–20(j) into the mortgage document in this case. Maj. Op. at pp. 227–28 (emphasis added). The majority was right the first time.

The language relied upon by the majority reads as follows:

> The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. For purposes of this subsection, the term "homeowner" includes the spouse of a homeowner.

12 U.S.C.A. 1715z–20(j). However, the majority fails to appreciate that at the time Kenneth Smith signed the mortgage document and promissory note, the Secretary was promoting and cheerfully insuring single-borrower home equity conversion mortgages in circumstances of the type before us. These actions were based on a rule sentiently created by the Secretary, which the Secretary has since all but admitted directly conflicted with 1715z–20(j), and which the United States District Court for the District of Columbia has recently confirmed to be so. *Bennett v. Donovan*, 4 F.Supp.3d 5, 8, 2013 WL 5424708 at *1 (D.D.C.2013). The rule read as follows:

> The mortgage shall state that the mortgage balance will be due and payable in full if a mortgagor dies and the property is not the principal residence of at least one surviving



Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 11 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

mortgagor, or a mortgagor conveys all or [sic] his or her title in the property and no other mortgagor retains title to the property.

24 C.F.R. § 206.27(c)(1) (adopted August 16, 1995). Asked by the United States

[200 So.3d 233]

Court of Appeals for the District of Columbia Circuit during an intermediate appellate phase of the *Bennett* litigation to justify the rule in the face of the governing statute, the only explanation the Secretary could muster for flouting the plain language of the federal statute was "concern[ ] about the scenario in which a homeowner, after taking out a reverse mortgage, marries a spouse—particularly a young spouse—and thereby significantly increases a lender's risk." *Bennett v. Donovan,* 703 F.3d 582, 586 (D.C.Cir.2013).[16] More recently, just five months ago—perhaps recognizing that the United States Congress was right all along or, forfend, having a momentary mental relapse to that quaint time in the past when it was dogma that the Congress made the laws and the Executive carried them out—the Secretary, at great expense and additional program risk, is now offering to purchase single-borrower home equity loans of the type involved in this case from the private lenders who funded them and allowing the non-borrowing spouse to remain in the home until she dies or leaves the residence. *See* Letter 2015–03 from U.S. Dep't of Hous. and Urban Dev., to All Approved Mortgagees at p. 8 et seq. (January 29, 2015) (on file with author).

In all of this, HUD recognizes that section 1715z–20(j) does not empower it to void or alter the terms of a bona fide mortgage contract between a "Borrower" and a private lender. *Id.* at p. 3; *Bennett v. Donovan,* 797 F.Supp.2d 69, 77 (D.D.C.2011) ("As the Secretary points out, whether the mortgages were properly insured or not does not affect the mortgage's own contractual terms, and it is these terms that require Plaintiff's spouses' estates to repay the mortgages or sell the houses."); *see also United States v. Neustadt,* 366 U.S. 696, 709 and n. 24, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) (finding that existence of mortgage insurance program did not create a legal relationship between the government and the individual mortgagor.). Yet, the majority somehow seeks to empower HUD where Congress through section 1715z–20(j) does not. Perhaps the majority is swayed by the initial-appearing heavy-handedness or unfairness of the program. However, there is no allegation of fraud, misrepresentation, or trickery in this case, and fairness is in the eye of the beholder. As explained in full detail in *Plunkett,* HUD incentivized this program in this fashion. It does not follow that just because HUD went rogue, agreements made between private parties are ipso facto unenforceable. In this case, a private lender and a private individual made their own private deal. We should not contort ourselves to impose our own view of what is right or good. "Law is something more than will exerted as an act of power." *Hurtado v. California,* 110 U.S. 516, 535, 4 S.Ct. 111, 28 L.Ed. 232 (1884).

I would affirm the decision of the trial court.

**On Motion for Rehearing En Banc**

Before SUAREZ, C.J., and WELLS, SHEPHERD, ROTHENBERG, LAGOA, SALTER, EMAS, FERNANDEZ, LOGUE and SCALES, JJ.

Reverse Mortgage Solutions' motion for rehearing en banc is denied.

[200 So.3d 234]

SUAREZ, C.J., and WELLS, ROTHENBERG, SALTER, FERNANDEZ, LOGUE and SCALES, JJ., concur.

SHEPHERD, LAGOA and EMAS, JJ., dissent.



Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 12 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

Notes:

1 Unlike a traditional mortgage arrangement, in a reverse mortgage arrangement, the lender, after determining the value of the borrower's principal residence, generally will make regular (usually monthly) payments to the borrower during the borrower's lifetime. The note's principal amount is derived by a lender formula that includes the sum of the value of the lender's payments to the borrower, closing costs, accrued interest, insurance and servicer/lender fees. *See, e.g., Bennett,* 703 F.3d at 584–85. While the subject note and mortgage both reference a "Loan Agreement" (which, presumably, defines the monthly amount paid to the borrower and the calculation of the note's principal), no Loan Agreement is contained in the record on appeal. The subject note's principal amount is $544,185.

2 Pursuant to Eleventh Judicial Circuit Administrative Order No. 10–03 A1, Reverse Mortgage Solutions filed, contemporaneously with its complaint, a form certifying that the subject property is Mrs. Smith's homestead residence.

3 *See* 12 U.S.C. § 1715z–20(j), *infra* note 4.

4 Paragraph 7 of the Final Judgment of Foreclosure expressly forecloses all of Mrs. Smith's interest in the subject property and implicitly recognizes that she is still alive. Hence, the error appears on the face of the judgment on appeal.

5 This statutory provision, discussed in more detail in section II. F, below, reads in its entirety, as follows:

> (j) Safeguard to prevent displacement of homeowner
>
> The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. For purposes of this subsection, the term "homeowner" includes the spouse of a homeowner. Section 1647(b) of Title 15 and any implementing regulations issued by the Board of Governors of the Federal Reserve System shall not apply to a mortgage insured under this section.

6 With regard to the note, only Mr. Smith is referenced as the "Borrower." Mrs. Smith is neither mentioned nor referenced in the note. Reverse Mortgage Solutions, however, seeks no relief from Mrs. Smith based on the note. It is only Mrs. Smith's status as a mortgagor that is implicated in this appeal.

7 The Borrower Covenant reads in its entirety, as follows:

> BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

8 It is not clear from the record how the subject property was titled at the time the mortgage was executed by Mr. and Mrs. Smith. Reverse Mortgage Solutions's verified complaint, however, alleges that Mrs. Smith



Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 13 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

is the owner of the subject property, an allegation Mrs. Smith admits in her answer.

[9] Paragraph 17 of the mortgage reads, in relevant part, as follows: "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located."

[10] The record is replete with proof that the subject mortgage is a "home equity conversion mortgage" issued and insured under the auspices of 12 U.S.C. § 1715z–20. The subject mortgage references: (i) a Federal Housing Authority case number, (ii) requirements promulgated by the HUD Secretary, (iii) certain events of default triggering the lender's right to foreclosure if authorized by the HUD Secretary, (iv) the right of the lender to accelerate the amounts secured by the mortgage if the HUD Secretary notifies the lender within eight months of loan initiation that the loan is not insurable pursuant to the National Housing Act (which includes 12 U.S.C. § 1715z–20 ). Additionally, both the verified complaint and the mortgage expressly reference a second mortgage—in which HUD is the mortgagee—securing any payments HUD might make on behalf of the Borrower pursuant to the National Housing Act. Indeed, HUD was named as a defendant in the action and HUD's second mortgage was foreclosed in the Final Judgment of Foreclosure.

[11] It appears that, as part of the reverse mortgage origination process, some reverse mortgage originators are alleged to have advised one elderly spouse to execute a quit-claim deed, deeding their jointly owned property to the other spouse, so that a single "Borrower" would appear on all paperwork. *See, e.g., Bennett,* 703 F.3d at 585 ; *Welte v. Wells Fargo Bank, N.A.,* No. EDCV–13–00463JGB, 2013 WL 6728889 at *2–3 (C.D.Cal. Dec. 18, 2013) ; *Wiseman v. First Mariner Bank,* No. ELH–12–2423, 2013 WL 5375248 at *4 (D.Md. Sept. 23, 2013). No such allegations have been made in this case.

In fact, as mentioned earlier, the verified complaint specifically alleges that Mrs. Smith owns the subject property, and Mrs. Smith executed the subject mortgage. We need not, and do not, reach the issues implicated in those cases where the nature of the surviving spouse's ownership interest in the subject property is in dispute.

[12] Of course, nothing in this opinion should be construed to limit Reverse Mortgage Solutions's ability to file a new foreclosure action upon the future occurrence of any of the conditions precedent outlined in Paragraph 9 of the subject mortgage.

[13] The "principal residence" issue was squarely before the trial court. In her Answer, Celia Smith asserted as a defense that "This mortgage should not be accelerated as the defendant, CELIA ELMIRA SMITH, is still alive **and**living in the real property as her homestead." (emphasis added). The majority seeks solace from the fatal flaw in its reasoning in this case by latching onto a statement of Reverse Mortgage's counsel on an unsworn form required for the processing of residential foreclosure cases during the foreclosure crisis, which was filed with the complaint in foreclosure in this case. *See* ff. 2. The form can provide no succor to the majority. Pleadings and attachments are no substitute for a trial transcript and exhibits. *See Fallon v. City Furniture,* 959 So.2d 306 (Fla. 3d DCA 2007) ("Pleadings are inadmissible to prove a fact in issue."). Nor does the form contribute any information concerning whether Ms. Smith resided on the property as of the date of trial, which no one contests as being the critical moment. See Majority Op. at p. 224.

[14] The majority insinuates that Celia Smith may have been in title to the property at the time Kenneth Smith executed the mortgage. The majority places its reliance for this inference on the allegation found in Paragraph 7 of the Verified Complaint for foreclosure that "Defendant(s), CELIA



Case 17-21018-LMI    Doc 44    Filed 01/08/18    Page 14 of 16

Smith v. Reverse Mortg. Solutions, Inc., 200 So.3d 221 (Fla. App., 2016)

ELMIRA SMITH, own(s) the property." Of course, the Verified Complaint for foreclosure was filed after Kenneth Smith's death. Ironically, if one were to carry the insinuation of the majority to its logical conclusion, then Celia Smith would be a borrower, liable under the promissory note as well. *See* Maj. Op. at p. 226 (" 'BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in the Security Instrument ...' "); *see also* R. at 16 ("[Mortgage Agreement Paragraph 1:] Payment of Principal and Interest. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the note."). The logic of the majority has the additional unintended consequence of placing Reverse Mortgage Solutions, Inc. in violation of 12 C.F.R. § 202.7(d)(1) (2014) ("A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit.").

[15] The United States Department of Housing and Urban Development.

[16] Technically speaking, the HECM program is administered by Federal Housing Administration, commonly known as the FHA. The FHA is an agency housed within the United States Department of Housing and Urban Development. The FHA was created pursuant to the National Housing Act of 1934, Pub. L. No. 73–479, 48 Stat. 847 (1934), and has long had as its purpose the expansion of mortgage access and the enablement of home ownership. In this case, it simply forgets its place in our constitutional firmament.

---------



Edwards v. Reverse Mortg. Solutions, Inc., 187 So.3d 895 (Fla. App., 2016)

**187 So.3d 895**

**Johnnie Mae EDWARDS, Appellant,**
**v.**
**REVERSE MORTGAGE SOLUTIONS, INC., Appellee.**

**No. 3D14–2631.**

**District Court of Appeal of Florida, Third District.**

**March 2, 2016.**
**Rehearing Denied March 28, 2016.**

Legal Services of Greater Miami, Inc., and Jacqueline C. Ledón, for appellant.

McCalla Raymer and Toby Foor–Pessin, Orlando, for appellee.

**Opinion**

FERNANDEZ, J.

The defendant, Johnnie Mae Edwards, appeals the entry of a final judgment of foreclosure entered in favor of appellee, Reverse Mortgage Solutions, Inc., in this reverse residential mortgage foreclosure case. Following this Court's recent opinion in *Smith v. Reverse Mortgage Solutions, Inc., etc.*, ––– So.3d ––––, 2015 WL 4257632 (Fla. 3d DCA 2015) (motions for rehearing and rehearing en banc pending),

[187 So.3d 896]

we reverse because Reverse Mortgage failed to establish a condition precedent to its right to foreclose.

On November 21, 2006, Willie A. Edwards obtained a reverse mortgage from Reverse Mortgage using the equity in his marital home (a home equity conversion mortgage). Mr. Edwards signed and executed a promissory note for the debt. The note defines "borrower" as the person who signs at the end of the note. Mr. Edwards, joined by his wife, Johnnie Mae Edwards, secured the debt by signing and executing a mortgage. Mrs. Edwards appears as a borrower on the mortgage's signature block. However, she was not mentioned in the note, and her signature was not on the note.

On April 10, 2008, Mr. Edwards passed away. As per the terms of the mortgage's acceleration provision in paragraph 9(a)(i):

> **Grounds for Acceleration of Debt. Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if: A borrower dies and the Property is not the principal residence of at least one surviving Borrower; ...

Accordingly, Reverse Mortgage Solutions, Inc. accelerated the debt. Mrs. Edwards failed to pay the alleged sum due under the note and defaulted. On November 8, 2013, Reverse Mortgage filed a one-count foreclosure action. Initially, Mrs. Edwards was defaulted for her failure to appear and for failing to file any responsive pleadings. However, she eventually appeared pro se. A non-jury trial was held, at which point she had obtained counsel to represent her.

At trial, due to having been defaulted, Mrs. Edwards was barred from testifying and from entering affirmative defenses. Her counsel stated that she no longer had title of the home, having quitclaimed it to her husband prior to his application for the reverse mortgage. This assertion was not objected to. Mrs. Edwards contended that despite the default, Reverse Mortgage was still required to prove its case. She maintained that Reverse Mortgage needed to prove she defaulted under the note and mortgage by failing to pay the payment due on April 10, 2008 and all subsequent payments. The trial court held that Reverse Mortgage was entitled to foreclosure because Mr. Edwards was the



only borrower under the note, and therefore, the only borrower for the purposes of the mortgage's acceleration provision. Accordingly, as Mr. Edwards was now deceased, the trial court entered final judgement in favor of Reverse Mortgage. Mrs. Edwards then filed this appeal.

We believe the issue before us today is the exact same issue that was recently addressed by this Court in *Smith v. Reverse Mortgage, Solutions, Inc., etc.,* ––– So.3d ––––, 2015 WL 4257632. In *Smith,* we found that "based on the plain and unambiguous language of the mortgage," both the deceased husband and his wife were treated as "borrowers" under the mortgage, and each borrower was "protected from the foreclosure of the mortgage until **both** borrowers died." *Id.* at –––––, at *3 (emphasis added). Thus, we held in *Smith* that the wife who survived her spouse was a co-borrower and that her death was a condition precedent to Reverse Mortgage Solutions' ability to foreclose. *Id.* In *Smith,* as in the case before us, the surviving spouse was a borrower under the mortgage, but was not designated a borrower under the note.

As in *Smith,* we hold that the trial court's final judgment in the case before us should be reversed because Reverse Mortgage has not met the condition precedent required before it is able to foreclose on Mrs. Edward's property. Here, Mrs. Edwards is a co-borrower, and her death is a

[187 So.3d 897]

condition precedent to Reverse Mortgage's ability to foreclose on the property. *Smith,* ––– So.3d at –––––, 2015 WL 4257632 at *5.

We agree with the reasoning in *Smith* that this holding is consistent with Florida's Homestead provisions, Article X, § 4(c), Florida Constitution, as well as the purpose of federal laws related to reverse mortgages enacted to prevent the displacement of elderly homeowners. *See Smith,* ––– So.3d at –––––, 2015 WL 4257632 at *4; 12 U.S.C. § 1715z–20(j). This provision provides, and as we stated in *Smith,* "For purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner." *See Smith,* ––– So.3d at –––––, 2015 WL 4257632 at *11; 12 U.S.C. § 1715z–20(j).

We adhere to *Smith* and agree that "it would be difficult, if not impossible, for us to construe [Mrs. Edwards] as anything other than a 'Borrower' ". Accordingly, Mrs. Edwards is a "borrower" for purposes of Paragraph 9 of the mortgage's acceleration provision. *Smith,* ––– So.3d at –––––, 2015 WL 4257632 at *5. It then follows that pursuant to the acceleration clause, Reverse Mortgage had to establish that either Mrs. Edwards died or that as of the date of the trial in the lower court, the property was no longer Mrs. Edward's residence. The record reflects that Mrs. Edwards is still alive, and the property is still her residence. Accordingly, Reverse Mortgage may not foreclose the mortgage, pursuant to the 9(a)(i) acceleration provision, against Mrs. Edwards, who is a surviving borrower under the mortgage, but not a borrower under the note.

We reverse the trial court's Final Judgment of Foreclosure and remand the case to the trial court to enter final judgment in favor of Mrs. Edwards.

Reversed and remanded with instructions.

