UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:  　　　　　　　　　　　　　　　　CASE NO.: 17-bk-21018-LMI
　　　　　　　　　　　　　　　　　　　　CHAPTER 13

ALEIDA C. NUNEZ,

　　　Debtor.
_____/

**NOTICE OF FILING SUPPLEMENTAL AUTHORITY IN FURTHERANCE OF
REVERSE MORTGAGE SOLUTIONS, INC'S MEMORANDUM OF LAW IN
SUPPORT OF OBJECTION TO CONFIRMATION OF PLAN**

COMES NOW, Reverse Mortgage Solutions, Inc. ("Secured Creditor"), by its undersigned counsel, and files the following case law in furtherance of its Memorandum of Law in Support of Objection to Confirmation of Plan: *Nationstar Mortgage, LLC d/b/a Champion Mortgage Company v. Williams*, 2016 WL 5887356, at *3-5 (Pa. Super. Ct. Sept. 12, 2016) (emphasis added) and *Consolo v. Bank of America,* 2017 WL 1739171, at *3 (Mass. Dist. Ct. May 2, 2017) (emphasis added).

　　　　　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　Robertson, Anschutz & Schneid, P.L.
　　　　　　　　　　　　　　　　　　　Attorneys for Secured Creditor
　　　　　　　　　　　　　　　　　　　6409 Congress Ave., Suite 100
　　　　　　　　　　　　　　　　　　　Boca Raton, FL 33487
　　　　　　　　　　　　　　　　　　　Telephone: 561-241-6901
　　　　　　　　　　　　　　　　　　　Facsimile: 561-997-6909

　　　　　　　　　　　　　　　　　　　By: /s/ Christopher P. Salamone
　　　　　　　　　　　　　　　　　　　Christopher P. Salamone, Esquire
　　　　　　　　　　　　　　　　　　　Bar Number 75951
　　　　　　　　　　　　　　　　　　　Email: csalamone@rasflaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 27, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

**Aleida C. Nunez**
9940 SW 155th Avenue
Miami, FL 33196

**Gianny Blanco**
10647 N kendall Dr
Miami, FL 33176

**Nancy K. Neidich**
www.ch13miami.com
POB 279806
Miramar, FL 33027

**Office of the US Trustee**
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

By: /s/ Christopher P. Salamone
Christopher P. Salamone, Esquire
Bar Number 75951
Email: csalamone@rasflaw.com

2016 WL 5887356
Only the Westlaw citation is currently available.
**NON-PRECEDENTIAL DECISION—
SEE SUPERIOR COURT I.O.P. 65.37**
Superior Court of Pennsylvania.

Nationstar Mortgage, LLC, d/b/
a Champion Mortgage Company
v.
Lee Audrey Williams and George E. Williams
Appeal of: Lee Audrey Williams

No. 1742 EDA 2015
|
FILED SEPTEMBER 12, 2016

Appeal from the Judgment Entered May 4, 2015, In the Court of Common Pleas of Philadelphia County, Civil Division at No(s): July Term, 2013 No. 4566

BEFORE: BOWES, OLSON and STRASSBURGER,[*] JJ.

**Opinion**

MEMORANDUM BY OLSON, J.:

***1** Appellant, Lee Audrey Williams, appeals from the judgment entered on May 4, 2015 in the amount of $121,696.33 in favor of Nationstar Mortgage, LLC, d/b/a Champion Mortgage Company (Nationstar) in a reverse mortgage foreclosure action. Upon review, we affirm.

The trial court summarized the facts of this case as follows:

> Ida J. Williams [ (Mother) ], now deceased, was the holder of a life estate in real property located at 5918 Larchwood Avenue, Philadelphia, Pennsylvania (“[p]roperty”). [Mother's] son, George Williams, and her daughter, [Appellant], held remainder interests in the [p]roperty. On September 17, 2008, [Mother] appointed [Appellant] her attorney-in-fact under a durable power of attorney [POA]. On February 19, 2010, [Appellant], executing her authority under the [POA], and on behalf [Mother], executed a [h]ome [e]quity [c]onversion [m]ortgage, commonly referred to as a reverse mortgage. At the time, [Appellant] was sixty years old and did not qualify for a reverse mortgage as they are available only to homeowners aged sixty-two and above. [12 U.S.C.A. § 1715z-20(a) and (b) (defining eligibility requirements for participation in reverse mortgage market as "any homeowner who is, or whose spouse is, at least 62 years of age or such higher age as the Secretary [of Housing and Urban Development (HUD) ] may prescribe"); 24 C.F.R. § 206.33.]

> Reverse mortgages are administered by [HUD] and are insured by Section 255 of the National Housing Act. In a reverse mortgage, loan proceeds are paid out in accordance with a payment plan selected by the [b]orrower. If the lender becomes unable to make payments to the [b]orrower, the Secretary [of HUD] assumes responsibility for making the payments. The mortgage proceeds paid by the lender and/or HUD are secured by direct and second mortgages on the property. The obligation to satisfy the loan secured by the mortgages is deferred until the death of the [b]orrower, the sale of the home, or the occurrence of other events specified in regulations of the [HUD] Secretary. After certain qualifying events have occurred, the reverse mortgage is paid in a single payment.

> Here, the reverse mortgage executed on February 19, 2010 was between [Mother] (Borrower) and Bank of America, N.A. (Lender) and the Secretary of [HUD]. On the same date, in connection with the reverse mortgage, [Appellant], exercising her authority under the [POA], and on behalf of [Mother], signed a mortgage and note to Bank of America, N.A. ("Bank of America"). The mortgage secured the repayment of the debt evidenced by the note, including all future advances, with interest at a rate subject to adjustment, and all renewals, extension and modifications of the note, up to a maximum principal amount of $165,000.00. The mortgage to Bank of America was recorded on November 25, 2013 [.] On the same date, in connection with the reverse mortgage, [Appellant], exercising authority under the [POA], and on behalf of [Mother], signed a second mortgage and note with the Secretary of [HUD], as required by Section 255(i)(1)(A) of the National Housing Act to secure payments which the Secretary may make to or on behalf of the [b]orrower. The mortgage to the Secretary of [HUD] was recorded on March 9, 2010[.]

***2** The full debt under the reverse mortgage, if not paid earlier, was due and payable on December 14, 2064.

However, paragraph nine (9) of the mortgage to Bank of America provided, in relevant part, the following grounds for acceleration of [the] debt:

> (a) Due and Payable. Lender may require immediate payment in full of all sums secured by the Security Instrument if:
>
> (i) A Borrower dies and the [p]roperty is not the principal residence of at least one surviving Borrower; or
>
> (ii) All of a Borrower's title in the [p]roperty (or his or her beneficial interest in trust owning all or part of the [p]roperty) is sold or otherwise transferred and no other Borrower retains (a) title to the [p]roperty in fee simple, (b) leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or a life estate in the [p]roperty (or a beneficial interest in trust with such interest in the [p]roperty).

On December 28, 2010, [Mother] died. On November 21, 2012, a [m]ortgage [d]ue [and] [p]ayable [n]otification was sent to the [p]roperty advising that because of the death of [Mother], the reverse mortgage debt in the amount of $100,429.35 was due and payable within thirty (30) days of the date of the letter. On June 24, 2013, the mortgage to Bank of America was assigned to Nationstar [ ] by written permission. It was recorded on November 25, 2013[.]

On June 27, 2013, a [n]otice of [i]ntention to [f]oreclose [m]ortgage pursuant to Act 6 of 1974, 41 P.S. § 403m was sent to the [p]roperty by certified and first class mail notifying [Appellant] and George Williams of the default under the terms of the reverse mortgage, and the amount to pay off the mortgage. On March 19, 2014, the mortgage to Nationstar was assigned back to Bank of America by a written assignment. It was recorded on April 14, 2014 [.] Neither [Appellant] nor George William paid off the debt, nor did they attempt to sell the [p]roperty for 95% of its appraised value as permitted under HUD to satisfy the debt. On August 1, 2013, Nationstar filed a [c]omplaint in [m]ortgage [f]oreclosure against [Appellant] and George Williams. A non-jury trial was held on May 4, 2015. At the conclusion of the trial, [the trial court] entered judgment in favor of Nationstar in the amount of $121,696.33, foreclosing on [Appellant's] and George Williams's interest in the [p]roperty.

On May 14, 2015, [Appellant] filed a [p]ost-[t]rial [m]otion[.] [The trial court] denied the [p]ost-[t]rial [m]otion on May 29, 2015. On June 1, 2015, [Appellant] filed an appeal from the [ ] May 29, 2015 [o]rder. Pursuant to [the trial court's] directive, [Appellant] filed her [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal on June 16, 2015. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 14, 2015.]

Trial Court Opinion, 9/14/2015, at 2-6 (bullet point format and record citations omitted).

On appeal, Appellant presents the following issues for our review:

1. Did the trial court commit an error of law by determining [Nationstar] was entitled to declare the reverse mortgage loan due and payable upon the death of [Appellant's] mother pursuant to paragraph 9(a) of the mortgage, when the property remained the principal residence of [Appellant]?

*3 2. Did the trial court commit an error of law by determining that [Appellant] was not a "Borrower" within the meaning of the mortgage instrument, and determining that therefore, upon the death of [Appellant's] mother, the property did not remain the principal residence of a surviving borrower?

3. Did the trial court commit an error of law by looking beyond the mortgage instrument itself to construe the meaning of the term "Borrower" in the mortgage instrument?

4. Did the trial court commit an error of law and abuse its discretion by sustaining hearsay objections to [Appellant's] testimony that prevented her from establishing the basis for her equitable defense to foreclosure?

Appellant's Brief at 3-4 (suggested answers omitted).

==We will examine Appellant's first three claims as presented in a single discussion as all of those issues center on the contention that the trial court erred by determining Nationstar was entitled to declare the reverse mortgage==

at issue due and payable upon Mother's death. Appellant avers that she was a surviving borrower and the property remained her primary residence under the plain, contractual terms of the reverse mortgage. *Id.* at 13-14. Appellant avers the trial court erroneously determined that Appellant was not a borrower despite her designation as such in the first paragraph of the mortgage instrument. *Id.* at 16. She claims the "mortgage contained separate signature lines with the three borrowers' [ (Mother's, Appellant's, and George Williams') ] names pre-printed below." *Id.* at 18. For support, Appellant relies on a Florida appellate decision, *Smith v. Reverse Mortgage Solutions, Inc.*, 2015 WL 4257632 (Fla. App. 3 Dist. 2015). *Id.* at 19-20.

Appellant criticizes the trial court's search beyond the definition of borrower set forth in the mortgage, including the court's examination of other transaction documents. Appellant claims she was not a party to these instruments and, thus, it was improper to infer the contract's meaning from them. *Id.* at 17-18, 21. Appellant also points out that some documents name only Mother as a borrower, while other documents name all three family members as borrowers. As such, the trial court was required to construe these ambiguities against Nationstar as the drafter of the contract. *Id.* at 30. Appellant argues, "[t]he fact that [Mother] was the only 'borrower' on the promissory note, *i.e.* the only person personally liable for payment, did not mean that she was the only 'borrower' on the mortgage." *Id.* at 23. Appellant further claims that Mother had no duty to preserve the property for her children and, therefore, "[Nationstar] could have taken a mortgage from [Mother] alone without including the remainderpersons as parties thereto, without effecting the mortgage [and the] fact that [Appellant] **was** named as a borrower, when she did not have to be so named, confirms that the parties **intended** her to be so named[.]" *Id.* at 25 (emphasis in original). Likewise, Appellant argues Nationstar was not obligated under federal regulations to name Appellant as a borrower under the mortgage, but it did so anyway. *Id.* at 27-28. Thus, in sum, Appellant maintains the conditions precedent had not been met for Nationstar's foreclosure action. *Id.* at 15-16.

Initially, we note:

> Reverse mortgages have been described as a financial planning device for the elderly who are often house rich, but cash poor. A reverse mortgage can address this dilemma by providing a means for converting home equity into cash. In a reverse mortgage, as in a conventional mortgage, the mortgagee or lender advances money to the borrower or mortgagor. However, in a reverse mortgage the borrower is often times not obligated to repay any portion of the loan or the interest on the loan amount until the property is sold, the loan matures or the borrower dies or experiences an extended absence from the premises. The interest on the borrowed sums is added to the principal loan amount and the lender acquires a lien against the house in the amount of the initial principal and accumulated interest.

**\*4** *In re Estate of Moore*, 871 A.2d 196, 201 n.3 (Pa. Super. 2005) (internal quotations and citations omitted).

A reverse mortgage is a contract. Since contract interpretation is a question of law, "our review of the trial court's decision is *de novo* and our scope is plenary." *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96 (Pa. Super. 2015). We previously determined:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.
>
> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

> In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Ramalingam v. Keller Williams Realty Group, Inc.*, 121 A.3d 1034, 1046 (Pa. Super. 2015) (citation and original emphasis omitted).

Here, the first paragraph of the reverse mortgage states:

> The mortgagor is [Mother], as to the Life Estate interest and [Appellant] and George E. Williams as to the remainder, whose address is 5918 Larchwood Avenue, Philadelphia, Pennsylvania, 19143 ("Borrower").

Reverse Mortgage, 2/19/2010, at 1. While Appellant argues that this language shows that she was a borrower under the mortgage, we note that the mortgage uses the singular term "borrower" rather than the plural form of that word. In addition, at the end of the document, just above the signature lines, the mortgage reads, "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument[.]" *Id.* at 8. Again, the mortgage employs the term "borrower" in the singular. There is also a stand-alone signatory line, with Mother's name and Appellant listed as POA pre-printed below it. *Id.* Appellant, as POA, signed for Mother on this first signatory line. *Id.* Directly below the first signature are two additional signatory lines. Underneath those lines, Appellant's and George Williams' typewritten names appear and both are designated "REMAINDERMAN." *Id.* Both parties signed the agreement and handwrote "Remainderman" after their signatures. *Id.* Thus, while the document does not explicitly define the term "borrower," the reverse mortgage instrument refers only to a single borrower.

**\*5** Further, we reject Appellant's reliance on *Smith v. Reverse Mortgage Solutions, Inc.*, 2015 WL 4257632 (Fla. App. 3 Dist. 2015). Initially, we note that while the pronouncements of courts in sister states may be persuasive authority, those pronouncements are not binding on Pennsylvania appellate courts. *See Umbelina v. Adams*, 34 A.3d 151, 160 n.3 (Pa. Super. 2011). Further, the facts of *Smith* are markedly different from this matter. *Smith* dealt with a reverse mortgage taken out by husband and wife borrowers. The reverse mortgage "identifi[ed] Mr. Smith as 'a married man' and the mortgagor, [and] thereafter refer[red] to [him] as the "Borrower." *Smith*, 2015 WL 4257632, at \*3. However, both spouses signed the mortgage. The Florida Court's decision was based, *inter alia*, upon the fact that Mr. Smith was specifically delineated in the mortgage as "a married man" and "Florida's Constitution[al] require[ment that] Mrs. Smith [sign] the mortgage to effectuate the lender's security interest in [the couple's] homestead property [...] since Mr. Smith was married to Mrs. Smith at the time the mortgage was executed [and] only a deed containing Mrs. Smith's signature could validly convey her interest in the property." *Id.* at \*4. Additionally, examining federal reverse mortgage law, the *Smith* Court recognized "Congress's clear intent to protect from foreclosure a reverse mortgagor's surviving spouse who is maintaining the encumbered property as his or her principal residence." *Id.* at \*5. Here, unlike Mrs. Smith, Appellant was not a necessary party to the mortgage. Appellant was not a surviving spouse and had only a remainder interest in the subject property. Under the intra-family transfer instrument through which Mother acquired her life estate interest in the property, Mother enjoyed the right to encumber the property freely and without the consent of George Williams or Appellant. *See* Intra-Family Transfer Agreement, 2/19/10, at 1 ("Grantors do hereby grant and convey unto [Mother], for her life, a life estate **with full powers of disposition and authority during her life to sell, convey, mortgage and otherwise dispose the entire estate in the [p]roperty (except by Last Will and Testament) without the consent or joinder of any remainderman, and to retain absolutely as her own, all of the proceeds thereof, thereby divesting the remainder granted by the Indenture, without liability for waste**") (emphasis added).

We also are not troubled by the trial court's examination of documents other than the mortgage agreement. As this Court previously determined, "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Huegel v. Mifflin Const. Co., Inc.*, 796 A.2d 350, 354-355 (Pa. Super. 2002) (citation omitted). Upon review of the certified record, most of the supporting documentation, including the loan application, two promissory notes, HUD documents, a home equity agreement, and a certificate of reverse

mortgage counseling identify only Mother as a borrower. On these documents, Appellant signed in her official capacity as POA for Mother, but did not sign these documents in her own right as a borrower.

We find, however, most compelling the ownership interest certificate, which stated as follows:

> If you have an ownership interest in the [ ] property but will *not* be a borrower under the proposed reverse mortgage, you need to be aware of the following:
>
> * * *
>
> If you continue to reside in the property after divestiture and the borrower predeceases you [ ], the reverse mortgage will become due and payable.

Ownership Interest Certificate, 12/22/2009, at 1. As POA, Appellant signed for Mother on a signatory line specifically designated as "Borrower." Appellant also signed the certificate in her own capacity, on a signatory line specifically designated as "Non-Borrowing Resident." Thus, Appellant explicitly acknowledged that she was a non-borrowing resident.

Based upon all of the foregoing, including construing all of the written instruments that are part of this one transaction, we conclude the trial court did not err in determining Mother was the sole borrower under the reverse mortgage.[1] Hence, Appellant's first three issues lack merit.

Finally, in her fourth issue presented on appeal, Appellant argues the trial court committed an error of law and abused its discretion by sustaining Nationstar's hearsay objections to Appellant's testimony regarding an alleged equitable estoppel defense to foreclosure. Appellant claims that Nationstar "or its agents promised her, at the time of the loan origination, that she would not lose her home upon the death of her mother, and that [Nationstar] could not later foreclose in violation of that promise." Appellant's Brief at 31. She claims the trial court erred by excluding her testimony as hearsay and not subject to the admission of a party opponent exception to hearsay.[2] *Id.* Appellant further argues the trial court erred in concluding that she did not present evidence that the declarant was Nationstar's agent or had authority to make promises to Appellant because, at trial, the trial court took judicial notice that there were representatives "from the mortgage company and from the lender" at the closing. *Id.* at 33.

*6 We review a trial court's decision regarding the admission of evidence under the following standard:

> It is well established in this Commonwealth that the decision to admit or to exclude evidence [ ] lies within the sound discretion of the trial court. Moreover, our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1274 (Pa. Super. 2005).

The Pennsylvania Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). The rules further provide that "[h]earsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. The statement at issue is hearsay, as it was made out of court and was offered by Appellant to prove the truth of the matter asserted, *i.e.*, that the subject property would not be foreclosed upon in the event of Mother's death. It is therefore inadmissible unless an exception to the hearsay rule applies. See Pa.R.E. 802.

Rule 803(25) creates an exception to the hearsay rule for admissions by party-opponents and states, in pertinent part:

**(25) An Opposing Party's Statement.** The statement is offered against an opposing party and:

(A) was made by the party in an individual or representative capacity;

(B) is one the party manifested that it adopted or believed to be true;

> (C) was made by a person whom the party authorized to make a statement on the subject;
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]

Pa.R.E. 803(25).

"The proponent of an admission by a party-opponent under Rule 803(25)(D) must establish that the declarant was an employee of the principal at the time the statement was made, and the statement concerned a matter within the scope of employment." Harris, 880 A.2d at 1277 (citation omitted). Moreover,

> It is the responsibility of the judge [ ] to resolve preliminary factual questions which form a basis for the legal admissibility of evidence. These preliminary questions include whether evidence qualifies under an exception to the hearsay rule. In considering the admissibility of evidence, a trial court may properly consider credibility. Appellant, as proponent of the statement, bears the burden of proof and must convince the court that the hearsay statement is admissible as an admission of a party opponent.
>
> * * *
>
> Without this safeguard, parties could present to the jury any statements that they assert are admissions by their opponents, effectively gutting the hearsay rule.

*Id.* at 1278 (internal citations and quotations omitted). Bald statements that a declarant was an agent will not suffice. *Id.* at 1277 ("Beyond an approximate height and a characterization of the speaker as thin, Appellant provided no information about the declarant.").

**\*7** On this issue, the trial court determined:

> Not only was [Appellant's] trial testimony vague, it was unaccompanied by any supporting evidence. The broker who allegedly made these promises was not called to testify at trial. In fact, [Appellant] did not provide [the trial court] with any other evidence to corroborate her claim either by other testimony from other witnesses, or written documents.

Trial Court Opinion, 9/14/2015, at 16.

Upon review, we discern no abuse of discretion in excluding the proffered testimony as hearsay, not subject to exception. Appellant could not identify the declarant with specificity. She testified "a Caucasian gentlemen" came to the subject property to discuss generally the reverse mortgage process, but Appellant did not "remember anything else about him." N.T., 5/4/2015, at 67. Later, Appellant testified that at the loan closing, she and her brother were there with "the loan people." *Id.* at 69. The trial court determined that Appellant's testimony was not credible, describing it as vague and without support. Without a description of the individual(s) who allegedly made representations, Appellant could not establish an agency relationship. Finally, while the trial court took "judicial notice that [ ] at the closing, there [were] representatives there from the mortgage company and the lender[,]" it did not take judicial notice that those representatives were authorized to make the alleged statements or that the statements were made within the scope of that relationship. N.T., 5/4/2015, at 74. Thus, Appellant simply did not meet her burden of proof under Rule 803(25). Accordingly, we discern no abuse of discretion in excluding the proffered testimony and Appellant's final issue fails.

Judgment affirmed.

Judge Bowes joins this Memorandum.

Judge Strassburger files a Dissenting Memorandum.

DISSENTING MEMORANDUM BY STRASSBURGER, J.
I respectfully dissent.

The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Township v. Clemmer*, 43 A.2d 502 (Pa. 1988). The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385 (Pa. 1986). Further, it is well-settled that

the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement. As this Court [has] stated..., [w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence. Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended.

*Steuart v. McChesney,* 444 A.2d 659, 661 (Pa. 1982) (citations omitted; emphasis in original).

Instantly, the first page of the mortgage document states as follows: "The mortgagor is [decedent], as to a life estate interest and [Appellant] and George E. Williams, as to the remainder, whose address is 5918 Larchwood Avenue, Philadelphia, Pennsylvania 19143 ("Borrower")." Mortgage, 3/9/2010, at 1. All three named borrowers signed this document. *Id.* at 8. The above-quoted language is unequivocal: Appellant was intended as a borrower under the terms of the mortgage. Therefore, the court erred in relying on extrinsic evidence to determine the parties' intent.

Even if there were some ambiguity with respect to this mortgage language, "[a]s a general rule, agreements will be construed against the drafter when terms are ambiguous." *Gallagher v. Fidelcor, Inc.,* 657 A.2d 31, 34 (Pa. Super. 1995). Construing the terms of the mortgage against Nationstar compels the same result: Appellant is a named borrower and is therefore entitled to remain in the property.

Accordingly, because I believe the trial court committed an error of law in going outside of the mortgage document to ascertain its meaning, I would reverse the trial court order.

**All Citations**

Not Reported in A.3d, 2016 WL 5887356

---

Footnotes

\*    Retired Senior Judge assigned to the Superior Court.

1     We find further support in our interpretation from the federal regulations. In order to qualify for a reverse mortgage, "[t]he youngest mortgagor shall be 62 years of age or older at the time[.]" 24 C.F.R. § 206.33. Appellant was 59 years old at the time the mortgage. N.T., 5/4/2015, at 78. Appellant testified that she was aware that neither she nor her brother qualified for a reverse mortgage at the time of its origination. *Id.*

2     At the foreclosure hearing, Appellant also argued that her testimony qualified under the state of mind exception to hearsay. N.T., 5/4/2015, at 68. However, in her brief to this Court, Appellant does not set forth any argument or relevant law pertaining to the state of mind exception. Thus, she has waived her prior contention. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

---

**End of Document**    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 1739171
Only the Westlaw citation is currently available.
United States District Court,
D. Massachusetts.

John CONSOLO, Plaintiff,
v.
BANK OF AMERICA et al., Defendant.

Civil Action No. 15-11840
|
Filed 05/02/2017

**Attorneys and Law Firms**

Todd S. Kaplan, Greater Boston Legal Services, Boston, MA, for Plaintiff.

Dean J. Wagner, John H. McCann, III, Shechtman Halperin Savage, LLP, Pawtucket, RI, Graham H. Claybrook, McGuireWoods LLP, Charlotte, NC, Randall L. Souza, Kelly & Mancini, PC, Providence, RI, for Defendant.

Opinion

### MEMORANDUM AND ORDER

Denise J. Casper, United States District Judge

**I. Introduction**

*1 Plaintiff John Consolo ("Consolo") filed this lawsuit against Defendants Bank of America and NationStar Mortgage LLC ("Defendants") bringing claims for breach of contract (Count I), promissory estoppel (Count II), negligent misrepresentation (Count III), breach of implied covenant of good faith and fair dealing (Count IV) and violation of Mass. Gen. L. c. 93A (Count V). D. 1-2. Defendants have moved for summary judgment. D. 50. For the reasons stated below, the Court ALLOWS Defendants' motion.

**II. Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.' " Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III. Factual Background**

For purposes of this summary judgment motion, the Court will consider undisputed facts taken from the parties' Rule 56.1 statements.[1] Consolo is the son of Mary Consolo, who became owner of the property located at 262 East Eagle Street, East Boston, Massachusetts (the "Property") in 1984. D. 52-1 at 5 (Consolo's Deposition). In 1996, Mary Consolo transferred ownership of the Property to Consolo and his brother, Gaetano Consolo, by quitclaim deed. Id. at 13-14; D. 52-2 at 72. In doing so, Mary reserved a life estate for herself in the Property. D. 1-2 at 6. In 2000, when Mary was 85 years old, she signed a power of attorney appointing Consolo to manage her affairs. Id. At that time, Consolo resided at an apartment on the Property (and he continues to live there). Id.; D. 52-1 at 5.

*2 In 2009, the Consolos decided to seek a home equity conversion loan (also known as a reverse mortgage) (the "Loan") secured by the Property. D. 1-2 at 7. At or about this time, Gaetano Consolo, gave Consolo a power of attorney to allow him to apply for the Loan on Gaetano's behalf. Id. at 7-8. Consolo called Bank of America and spoke with Tim Keough ("Keough"), to discuss whether his family would be eligible to obtain the Loan. Id. The two communicated about the Loan solely through telephone and e-mail. Id. Initially, Consolo applied for

the Loan on the Property in Gaetano's name. Id. at 8; D. 52-1 at 33. Consolo's objective from the beginning of this process was to secure a Loan that would also allow Mary, Gaetano and himself to live in the Property until they died. D. 52-1 at 32. Understanding that his family could maximize the cash from the Loan by basing it on Mary's age as opposed to Gaetano's age, D. 1-2 at 8,[2] Consolo decided to apply for the Loan on the Property in Mary's name and again completed the Loan counseling over the phone. Id.

To effectuate the Loan, Keough sent Consolo a packet of documents to sign. Id. at 9. The adjustable rate home equity conversion mortgage (the "Mortgage") stated the following:

> THIS MORTGAGE ("Security Instrument") is given on April 24, 2009 ("Date"). The mortgagor is John G. Consolo and Gaetano F. Consolo, as tenants in common and Mary Consolo, reserving a Life estate whose address is 262 East Eagle Street East Boston, MA 02128 ("Borrower").

D. 52-2 at 23. On the signature page of the Mortgage, the document read:

> BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

D. 52-2 at 32. Underneath this statement, Bank of America included signature lines for each of the three Consolos with their preprinted names underneath each line: "Mary Consolo, by John G. Consolo, her attorney in fact;" "John G. Consolo, as remainderman;" and Gaetano F. Consolo, remainderman, by John G. Consolo, his attorney in fact." Id. Consolo signed the Mortgage on behalf of all three. Id. The Mortgage also contained the following acceleration clause:

**9. Grounds for Acceleration of Debt**

**(a) Due and Payable**. Lender may require immediate payment-in-full of all sums secured by this Security instrument if:

> (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or
>
> (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate, (or retaining a beneficial interest in a trust with such an interest in the Property).

Id. at 26 (bold in the original). The Adjustable-Rate Note Home Equity Conversion (the "Note"), however, only listed Mary Consolo as the borrower and only required Mary's signature, which Consolo signed on her behalf with the power of attorney. Id. at 102-04. Additionally, the Note contained a clause that mirrored the acceleration clause found in the Mortgage. Id. at 118. In addition to the Note (which was incorporated by express reference in the Mortgage, id. at 23), there were numerous other closing documents that also only listed Mary as the borrower (although signed by Consolo on her behalf with her power of attorney) to close the Loan. These documents included the Residential Loan Application for Reverse Mortgages, HUD/VA Addendum to Uniform Residential Loan Application; Good Faith Estimate of Settlement Charges; Settlement Statement; Third Party Contact Form; Errors and Omissions/Compliance Agreement; Personal Liability Notice; Flood Hazard Determination; and Notice of Right to Cancel. D. 52-2 at 87, 90, 91, 93-101, 119.

**\*3** After receiving the Loan documents and prior to signing them, Consolo called Keough to confirm that his understanding of the identification of him on the Mortgage as "remainderman" and that the terms of the Mortgage would allow him to stay in the Property following the death of his mother. D. 52-1 at 33-34. Keogh confirmed Consolo's understanding and Consolo then signed the documents. Id. In February 2012, Mary Consolo passed away. Id. at 25. Bank of America sent Consolo a letter informing him that the acceleration clause of the Mortgage and Note had been triggered by Mary's death and that the Loan was due in full, which Consolo

acknowledged receiving. Id. After the instant action was filed, Bank of America and Nationstar attempted to foreclose on the Property. Id. at 37, 39.

## IV. Procedural History

Consolo instituted this action on April 23, 2015 in Suffolk Superior Court, D. 1-2 at 4, and Defendants removed the case to this Court. D. 1. Defendants have now moved for summary judgment. D. 50. The Court heard the parties on the pending motion and took the matter under advisement. D. 60.

## V. Discussion

### A. Breach of Contract

Consolo brings a breach of contract claim against Defendants, arguing that he was a borrower on the Loan and that Defendants breached the agreement by accelerating the Loan and attempting to foreclose on the Property while he remained alive and resided as a resident at the Property. D. 53 at 4. Defendants counter that the terms of the Loan are clear that Mary Consolo was the sole borrower and, therefore, the Loan became due and payable upon her death. D. 51 at 8.

When evaluating a breach of contract claim under Massachusetts law, courts must first assess whether the contract provision at issue is ambiguous, which is a question of law. Barclays Bank PLC v. Poynter, 710 F.3d 16, 21 (1st Cir. 2013). "To answer the ambiguity question, the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties." Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008). Language is ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Gemini Inv'rs Inc. v. AmeriPark, Inc., 643 F.3d 43, 52 (1st Cir. 2011) (quoting Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998)). In considering whether a contract is ambiguous, the Court notes that it must read the contract "in a reasonable and practical way, consistent with its language, background, and purpose." Bukuras v. Mueller Grp., LLC, 592 F.3d 225, 262 (1st Cir. 2010).

The crux of Consolo's breach of contract claim is that the wording of the Mortgage signed by Consolo, his mother and his brother is unclear. The Mortgage states that "[t]he mortgagor is John G. Consolo and Gaetano F. Consolo, as tenants in common and Mary Consolo, reserving a Life Estate, whose address is 262 East Eagle Street East Boston, MA 02128 ("Borrower")." D. 52-2 at 23. The Mortgage also states that the Loan may be accelerated only if one of the borrowers dies and no other "surviving borrower" uses the Property as his or her principal place of residence. Id. at 26. As such, Consolo argues, the plain language of the Mortgage demonstrates that there was more than one borrower on the loan or, alternatively, that the language is ambiguous.

The Court, however, must take "the words [of the Mortgage] within the context of the contract as a whole, rather than in isolation." Barclays Bank PLC, 710 F.3d at 21. "[W]hen several writings evidence a single contract or comprise constituent parts of a single transaction, they will be read together." F.D.I.C. v. Singh, 977 F.2d 18, 21-22 (1st Cir. 1992); Matthews v. Planning Bd. of Brewster, 72 Mass. App. Ct. 456, 463 (2008) (noting that " 'interlocking documents [that] are part of a single transaction and are 'interrelated in purpose,' must be read together to effectuate the intention of the parties' ") (internal citation omitted). Here, the Loan was effectuated by the Mortgage (providing a security in the Property to Bank of America) and the Note (providing the loan by Bank of America to the borrower). Mary Consolo, moreover, was the borrower on the Note (signed by Consolo as her attorney in fact) and was listed as the borrower on the other closing documents for the Loan which were part and parcel of the contract transaction and, therefore, constitute the workings of a single transaction. See Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 250-51 (1992) (construing a guaranty and contemporaneous loan and security agreements as part of one transaction and reading them together even though the Guaranty did not incorporate the other documents by reference).[3] In each of these other closing documents, no one other than Mary was listed as the borrower on the Loan. See D. 52-2. Moreover, each of these documents (including the Mortgage) was signed on the same day, April 24, 2009, and Consolo was afforded the opportunity to inspect each document prior to affixing his signature to the various papers. D. 52-1 at 39. The only document that did not list Mary solely as the borrower was the Mortgage. Significantly, however, the Mortgage qualified Consolo and his brother as "remainderman." D. 52-2 at 32. As the Defendants point out, federal law requires that where a mortgagor has

a life estate in the Property (as Mary did here), the other owners (those holding a future interest or remainder in the estate as the Consolo brothers did here) must consent to the transaction. D. 51 at 9-10 & n.2 (citing 24 C.F.R. § 206.35). This qualification, coupled with the fact that all other documents were signed by Mary (through Consolo as her attorney in fact) as the borrower demonstrates that Consolo was not considered a borrower under the terms of the Loan. See Williams v. Nationstar Mortg., LLC, No. 13074566, 2015 WL 6407493, *4-5 (Pa. Ct. Cm. Pl. Sept. 14, 2015) (ruling that an individual who signed a reverse mortgage as attorney-in-fact for mother and personally as remainderman was not a borrower under the terms of the reverse mortgage loan). Because the Court must view the Mortgage in conjunction with the other Loan documents including the Note, the Court holds that the contract may not be viewed as ambiguous since the clear intent was that Mary Consolo was the borrower for the Loan transaction. The Court, therefore, ALLOWS the Defendants' motion for summary judgment as to Consolo's breach of contract claim.

### B. Promissory Estoppel

**\*4** Consolo next claims that when he decided to enter into the Loan, he reasonably relied on Keough's promise that Bank of America would not foreclose on the Property so long as he was alive and lived on the Property. D. 1-2 at 13. To prevail on a promissory estoppel claim, Consolo must show: 1) a representation intended to induce a course of conduct on the part of the person to whom the representation was made; 2) reasonable reliance upon the representations by that party; and 3) detriment to that party as a result of the reliance. Hall v. Horizon House Microwave, Inc., 24 Mass. App. Ct. 84, 93-94 (1987); Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 728 (1974).

Defendants maintain that it was unreasonable for Consolo to have relied upon Keough's alleged oral representations when they conflicted with the express terms of the Loan transaction. D. 51 at 12. Generally, "a person who is able to read a document but fails to do so when the opportunity is afforded is not entitled to have that document set aside on the grounds that she was misled into signing a paper different from that which she intended to sign, at least in the absence of evidence that she was induced by the other party to sign such a document without reading it." Taunton Fed. Credit Union v. Weiner, 76 Mass. App. Ct. 1128 (unpublished), 2010 WL 1708814, at \*1 (April 29, 2010). That is, where "a person can read, and is not prevented from reading what [he] signs, [he] alone is responsible for [his] omission to read what [he] signs." Id. Defendants argue that even if Keough misrepresented the contractual terms of the mortgage to Consolo and thereby induced Consolo to enter into the contract, there is no viable promissory estoppel claim because Consolo had ample time to review the loan documents and, had he done so properly, he would have realized he was not actually a borrower. D. 51 at 12.

In support of their position, Defendants rely upon Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459 (2003). In Kuwaiti, Plaintiff had initially reached an agreement with Defendant's representative to purchase particular computer parts, the terms of which were summarized in a price quotation that Defendant's representative provided to Plaintiff. Id. at 461. The quotation, however, contained qualifying language that it was "an invitation to offer only" and that "[a]ny contract resulting from the quotation must be accepted at [Defendant's] Corporate offices by a duly authorized representative of [Defendant]." Id. at 462. At Plaintiff's request, Defendant's representative also drafted a purchase order that incorporated the terms of the quotation, and both parties signed the purchase order. Id. at 462-63. Defendant subsequently reneged on the terms of the quotation and purchase order and Plaintiff brought suit for damages based on negligent misrepresentation. Id. at 463-64. The court ruled against Plaintiff, concluding that it was unreasonable for Plaintiff to have relied on the quotation Defendant's representative had provided "because it conflicted with the qualifying language of [the] quotation." Id. at 468. The court noted that " 'if a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious' " and reliance is unreasonable as a matter of law. Id. (internal citation omitted)

Defendants also direct the Court to Taunton Fed. Credit Union v. Weiner, 2010 WL 1708814, at \*1. In Weiner, a mother alleged that her son, who had no legal interest in her home, committed fraud by misrepresenting the nature of a loan document he presented to her. Id. While he claimed it would merely refinance the original mortgage on her mobile home to a more favorable interest rate and that it would not increase the outstanding loan amount, his representations were false. Id. The mother did not read the document at all prior to signing it, but argued that the

contract should be considered invalid. Id. The court ruled, however, that the mother "was not deceived as to the true nature of the loan document and was not prevented from having a meeting of the minds with the credit union with respect thereto." Id. Thus, the court held, "the son's fraud upon Weiner does not make the contract unenforceable against the credit union." Id.

**\*5** Consolo states that he received the Loan documents and then called Keough to ask what the term "remainderman" meant and Keough responded "exactly what it says, remain ... once your mother passes, you [and your brother] remain in the house." D. 52-1 at 33. While the plaintiffs in Kuwaiti and Taunton did not question the whether the written terms conformed to the oral representations they received in the manner that Consolo did, this distinction is insufficient to render Consolo's reliance on Keough's statements reasonable. The doctrine of promissory estoppel is designed to create an enforceable promise in the absence of consideration or an otherwise valid contract. R.I. Hosp. Tr. Nat'l Bank v. Varadian, 419 Mass. 841, 850 (1995) (citing Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760-61 (1978)). Here, however, there is an enforceable contract which, for the reasons already discussed, directly conflicts with the promise that Consolo now seeks to enforce. Viewed in this light, the Court cannot find Consolo's reliance on Keough's statements to be reasonable. See Taunton, 76 Mass. App. Ct. at 1128; Kuwaiti, 438 Mass. at 468; see also Wilton Props. II, Inc. v. 99 W., Inc., No. 2000000586F, 2000 WL 33170832, at *4 (Mass. Super. Nov. 1, 2000) (noting that "where a person [is] capable of reading and understanding a written instrument ... his ignorance of the force and effect of the instrument is not available as a basis for equitable relief by way of cancellation" (quoting O'Reilly's Case, 258 Mass. 205, 208-09 (1927))). As such, the Court ALLOWS Defendants' motion for summary judgment on Consolo's promissory estoppel claim.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

Consolo also claims that Defendants breached the implied covenant of good faith and fair dealing when they moved to foreclose on the Property while Consolo was still alive and living there. D. 1-2 at 15. "The covenant of good faith and fair dealing is implied in every contract." UNO Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). The covenant provides "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (quoting Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976)). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." UNO Restaurants, 441 Mass. at 385. Defendants respond that the terms of the Loan make clear that they had a right to foreclose on the Property upon the death of Mary Consolo and, therefore, that they cannot have breached the covenant of good faith and fair dealing by acting on that right. D. 51 at 13.

Consolo has failed to oppose Defendants' summary judgment motion concerning his claim for breach of the implied covenant of good faith and fair dealing. D. 53-1; D. 54 at 8-9. Accordingly, he has waived any argument that there was such a breach. See Clinton v. Maxim Lift, Inc., No. CV 12-11072-MBB, 2015 WL 12683973, at *2 (D. Mass. Mar. 23, 2015); see also Vallejo v. Santini-Padilla, 607 F.3d 1, 7 n.4 (1st Cir. 2010) (affirming dismissal where "[p]laintiffs have not cited a single authority in support of their assertion that their failure to timely oppose the motion to dismiss did not constitute waiver"); Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) (observing that the "district court was 'free to disregard' the state law argument that was not developed in [plaintiff's] brief").

Even if Consolo had not waived his claim, however, his claim for breach of the implied covenant of good faith and fair dealing would still fail. It is true that a party may breach this covenant without breaching an express term of that contract. Marx v. Globe Newspaper Co., No. 99-2579-F, 2002 WL 31662569, at *5 (Mass. Super. Nov. 26, 2002); see Fortune v. Nat'l Cash Register Co., 373 Mass. 96, 101 (1977). Yet the "scope of the covenant is only as broad as the contract that governs the particular relationship," Ayash v. Dana–Farber Cancer Inst., 443 Mass. 367, 385 (2005), and it cannot give rise to "rights and duties not otherwise provided for in the existing contractual relationship." UNO Restaurants, 441 Mass. at 385. Consolo's claim for breach of the covenant of good faith and fair dealing is derivative of his breach of contract claim and depends on an interpretation of the contract that would treat Mary, Gaetano and Consolo himself as joint borrowers. The Court has already granted summary judgment to the Defendants on his

breach of contract claim because Mary Consolo was the sole borrower for the purpose of the Loan. The Court cannot, then, sustain Consolo's claim for breach of the implied covenant of good faith and fair dealing without contradicting the unambiguous terms and creating rights and duties not contemplated in the express terms of the Loan. Accordingly, the Court also ALLOWS Defendants' motion for summary judgment as to Consolo's claim of breach of the implied covenant of good faith and fair dealing.

### D. Chapter 93A Claim

**\*6** Consolo next claims that Defendants engaged in unfair and deceptive actions in violation of Mass. Gen. L. c. 93A in connection with their representations concerning the Mortgage as well as their attempts to foreclose on the Property. D. 1-2 at 12-13. Chapter 93A proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2. A consumer alleging a 93A violation must establish (1) that the defendant has committed an unfair or deceptive act or practice; (2) injury; and (3) a causal connection between the injury suffered and the defendant's unfair or deceptive act. Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 615-16 (2009). A practice is unfair if it falls "within ... the penumbra of some common-law, statutory, or other established concept of unfairness; ... is immoral, unethical, oppressive, or unscrupulous; [and] ... causes substantial injury." Linkage Corp. v. Trs. of Bos. Univ., 425 Mass. 1, 27 (1997) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)).

Defendants argue that summary judgment must be granted as to the 93A claim because to be found liable under the statute their "conduct must be not only [have been] wrong, but egregiously wrong." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 41 (1st Cir. 1998). Defendants further argue that their conduct does not rise to this level of culpability because they were entitled to foreclose on the Property upon the death of Mary Consolo under the clear terms of the Mortgage. D. 51 at 13. Defendants' attempts to foreclose on the Property are not egregious in light of the terms of the unambiguous language in the Loan documents providing for acceleration of the loan upon the death of the borrower (Mary Consolo), as the Court has now ruled. To the extent that Consolo relies upon his promissory estoppel claim or misrepresentation claim for his c. 93A claim, this claim also fails since the Court has ruled, as discussed above and below, that Consolo's reliance upon any representations by Keough was not reasonable here and, therefore, it cannot be said that the Defendants' conduct was egregious in this regard. [4]

### E. Negligent Misrepresentation

Finally, Consolo claims that Defendant Bank of America engaged in negligent misrepresentation specifically in connection with Keough's inaccurate statements regarding the terms of the mortgage. D. 1-2 at 13-14. Defendants counter, however, that Consolo's negligent misrepresentation claim is, among other things, barred by the applicable statute of limitations. D. 51 at 14-15. Negligent misrepresentation claims are subject to the statutory three year limitations, Mass. Gen. L. 260 § 2A, see, e.g., Salois v. Dime Sav. Bank of N.Y., FSB, 128 F.3d 20, 24 (1st Cir. 1997); Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 761–62 (1st Cir. 1996); Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Research, No. 09-CV-11116-PBS, 2010 WL 2428690, at \*2 (D. Mass. June 11, 2010); Humana Found., Inc. v. Cantella & Co., No. 2000-CV-12393-ML, 2000 WL 33774752, at \*3 (D. Mass. Nov. 17, 2000).

It is undisputed that a few months after Mary Consolo's death, Bank of America sent a letter informing Mary Consolo's estate that the loan was due and payable due upon Mary's death in 2012. D. 52-1 at 25. It is also undisputed that on April 17, 2012, Consolo acknowledged Bank of America's correspondence. Id. at 26; D. 52-2 at 134. Consolo, therefore, was on notice that an alleged harm had occurred at least by April 17, 2012. Consolo, however, filed the instant action on April 23, 2015 which was over three years after he should have known about the harm. The Court recognizes that "the discovery rule ordinarily involves questions of fact and therefore in most instances will be decided by the trier of fact." Genereux, 577 F.3d at 360. Indeed, "[d]etermining when a plaintiff had notice of the likely cause of [an] injury is one example of such a [factual] determination." Id. Here, there is no date later than April 17, 2012 that could serve as the date of sufficient notice where Consolo himself acknowledged the Bank of America correspondence informing him that the loan was due and payable. [5] As such, the negligent misrepresentation claim is time barred and summary judgment is GRANTED as to this claim.

### VI. Conclusion

**\*7** For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 50.

**So Ordered.**

**All Citations**

Slip Copy, 2017 WL 1739171

Footnotes

1   In their reply brief, Defendants urge this Court not to consider Consolo's Rule 56.1 statement of undisputed facts, arguing that his statement is primarily based upon allegations set forth in his verified complaint. D. 54 at 2-3. Consolo's Rule 56.1 statement, D. 53-1, does, however, include references to his deposition and reliance upon a verified complaint, "the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)." Francois v. Putnam Investments, LLC, 34 Fed.Appx. 395, 398 (1st Cir. 2002) (quotations and citations omitted). Thus, to the extent Consolo's statement is based upon admissible evidence in his verified complaint and his deposition, the Court has considered them.

2   As a matter of law, Consolo, age 61 at the time, did not qualify for the Loan because a borrower must be 62 or older. 24 C.F.R. § 206.33. Although Consolo argues, in his opposition, D. 53 at 7, that technically there are a category of reverse mortgages that he would have qualified to receive, there is no admissible evidence that this was the case here. See D. 54 at 5; see also D. 52-2 at 33.

3   Consolo argues that this case is inapplicable here because a guaranty agreement is necessarily subject to another agreement and, therefore, even if the guaranty agreement does not reference other documents like loan and security agreements, those documents would need to be viewed as part of the transaction to give the guaranty agreement effect. D. 53 at 6. Consolo maintains that the Mortgage and Note here are separate contracts that do not need to be read together to give each other effect. Id. Case law in the Commonwealth, however, dictates that the documents must be read together when they are close in temporal space and are "closely interrelated." Chelsea Indus., Inc. v. Florence, 358 Mass. 50, 55 (1970). That is exactly the situation presented here. Furthermore, the Mortgage here clearly contemplated the operation of the Note and makes express reference to the Note, see D. 52-2 at 23-33, and these documents together effectuated the Loan transaction between the parties.

4   Since the Court dismisses the c. 93A claim on substantive grounds, it does not reach Defendants' separate argument that this claim is time-barred. Consolo additionally maintains that his 93A claim is viable because the Defendants attempted "to foreclose on Mr. Consolo's home while [this] action is pending." D. 53 at 14. Such allegation, however, was not made in his complaint and is not properly before the Court on this motion for summary judgment. See D. 55 ¶¶ 44-46; D. 55-1; D. 55-2.

5   One of the elements of negligent misrepresentation under Massachusetts law is that the plaintiff justifiably relied on the defendant's misrepresentation. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 41 (1st Cir. 1998). Because Consolo did not justifiably rely on Keough's statements, as discussed above as to the promissory estoppel claim, he cannot make out a claim for negligent misrepresentation on the merits, even as this claim is also time barred, as discussed above.

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2018 Thomson Reuters. No claim to original U.S. Government Works.                                    7