*Tagged Opinion*



**ORDERED in the Southern District of Florida on March 28, 2018.**

**Laurel M. Isicoff
Chief United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                                            CASE NO. 17-21018-BKC-LMI

ALEIDA C. NUNEZ,                                      Chapter 13

        Debtor.
_____/

**MEMORANDUM OPINION AND ORDER OVERRULING
OBJECTION TO CONFIRMATION BY REVERSE MORTGAGE SOLUTIONS INC.**

        This matter came before me on January 9, 2018, upon Objection to Confirmation filed by Reverse Mortgage Solutions, Inc. ("RMS") (ECF #19). Because I find that the Debtor, Aleida C. Nunez (the "Debtor"), was the "Borrower" under the Reverse Mortgage[1] encumbering the Debtor's home (the "Real Property"),[2] even though the Debtor was not the Borrower under the

---

[1] Adjustable Rate Home Equity Conversion Mortgage, dated June 24, 2008 by and among Olga E. Nunez and Aleida C. Nunez as "Borrower", and World Alliance Financial Corp. as "Lender", recorded in Official Records Book 26476, Page 3178 of the Public Records of Miami-Dade County, Florida.
[2] The Debtor's home is located in Miami-Dade County.

loan secured by the Reverse Mortgage, the Debtor may cure the Reverse Mortgage defaults in her Chapter 13 Plan.[3]

## FACTS[4]

On July 14, 2008, the Debtor's mother, Olga E. Nunez ("Mrs. Nunez"), executed a series of documents evidencing a loan made by RMS to Mrs. Nunez, in the maximum principal amount of $531,000.00 (collectively the "Loan Documents"). At the time the Loan Documents were executed, Mrs. Nunez, who was over 62 years old at the time, held a life estate in the Real Property; the Debtor, who was less than 62 years old at the time, and therefore ineligible for a reverse mortgage, held the remainder interest.[5] One of the documents executed by Mrs. Nunez was the Reverse Mortgage. The Reverse Mortgage, unlike the other Loan Documents, was executed by both Mrs. Nunez and the Debtor, and defined Mrs. Nunez and the Debtor collectively as the "Borrower". Both the Debtor and Mrs. Nunez signed the Reverse Mortgage under a paragraph setting forth the agreement of the Borrower to be subject to the terms of the Reverse Mortgage.[6] The Debtor's signature line was marked with her name and the word "Remainderman." Mrs. Nunez' signature line only identified her name.

---

[3] I have considered the Objection to Confirmation of Debtor's Chapter 13 Plan (ECF #19), Amended Response in Opposition to Creditor's Objection to Confirmation (ECF #25), Memorandum of Law in Support of Response to Objection to Confirmation of Chapter 13 Plan (ECF #48), Reply to Creditor's Memorandum of Law in Opposition to Creditor's Objection to Confirmation (ECF#49), and Notice of Filing Supplemental Authority in Furtherance of Reverse Mortgage Solutions, Inc.'s Memorandum of Law in Support of Objection to Confirmation of Plan (ECF #51).

[4] The following constitute my findings of fact and conclusions of law under Federal Rule of Civil Procedure 52 made applicable to this contested matter pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. The parties have not disputed the facts upon which I have relied, including the accuracy of the relevant documents, other than the ultimate fact - whether the Debtor is a "Borrower" under the Reverse Mortgage.

[5] According to RMS, the US Department of Housing and Urban Development ("HUD") requires that "[i]f an eligible mortgagor holds only a life estate when the mortgage is executed, all holders of any future interest in the property (remainder or reversion) will also be required to execute the mortgage to ensure that the mortgage is secured by a fee simple interest." HUD Mortgagee Letter 1997-15. Thus, both Mrs. Nunez and the Debtor were required to sign as mortgagors in order to subject the full fee to the lien of the Reverse Mortgage.

[6] The exact language is as follows – "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and any rider(s) executed by Borrower and recorded with it." The signature lines for witnesses, and then for Mrs. Nunez and the Debtor, immediately followed.

Paragraph 9(a) of the Reverse Mortgage states that a "[l]ender may require immediate payment in full of all sums secured by this Security Instrument if: (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower".

Mrs. Nunez died on June 23, 2016. Prior to Mrs. Nunez' death, the Reverse Mortgage went into default because Mrs. Nunez got behind on paying the real estate taxes and insurance. RMS, as the Secured Creditor, filed a Complaint to foreclose the Reverse Mortgage. The Complaint was later amended to include Mrs. Nunez' death as an additional ground for default.

On August 30, 2017, the Debtor filed this chapter 13 bankruptcy case. The Debtor's Chapter 13 Plan[7] (the "Plan") proposes to cure the taxes and insurance default, but doesn't otherwise include payments on account of the Reverse Mortgage, on the basis that the Reverse Mortgage doesn't require the payment of principal and interest. RMS objected to confirmation, arguing that the Debtor is not a Borrower under the Reverse Mortgage and therefore, the Debtor cannot "cure and maintain" the Reverse Mortgage under the Plan.

## ANALYSIS

The Reverse Mortgage is apparently a widely used, if not universal, form. Consequently, there are cases all over the country that have addressed whether the reference to "Borrower" in a reverse mortgage includes everyone identified in the preamble as "Borrower" or only the "Borrower" as designated in other documents executed in connection with the reverse mortgage. Those cases do not all agree. RMS has asked me to follow those cases that hold that including a party as a "borrower" under the defined terms of a reverse mortgage, when such party does not execute the underlying promissory note or other loan documents, does not make that party a "borrower" for purposes of surviving ownership rights if the party who signs the note dies.

---

[7] First Amended Chapter 13 Plan (ECF #22).

Citing to Florida cases on contract construction, RMS urges me to look at all of the documents executed in connection with the Reverse Mortgage to ascertain the parties' intent that only Mrs. Nunez is the "Borrower".[8] Those Loan Documents, RMS argues, makes clear that the "Borrower" in the Reverse Mortgage is only Mrs. Nunez notwithstanding what might otherwise appear to be the definition of "Borrower" in the Reverse Mortgage.

However, I do not agree with those cases upon which RMS has relied. Nor do I believe it is necessary or appropriate to look at the other Loan Documents to determine what "Borrower" means in the Reverse Mortgage. First, the Reverse Mortgage is unambiguous. The Reverse Mortgage makes clear that, for purposes of *its* terms, "Borrower" refers to both Mrs. Nunez and her daughter, the Debtor. The fact that "Borrower" is singular is of no moment. It is a defined term, and it is defined for purposes of the Reverse Mortgage as Mrs. Nunez *and* the Debtor. Even consideration of the other Loan Documents would not change the defined term of the Reverse Mortgage. While Florida case law certainly invites, and sometimes dictates, consideration of documents executed together as part of a contemporaneous transaction to determine the intent of the parties in connection with the agreement as a whole, none of those cases looks at documents to alter defined terms for the purposes of one particular document in the absence of an ambiguity. It is unfortunate that the Reverse Mortgage (both in this instance and in the apparent official form) uses the same defined term for those who are actually the mortgagors as is used for "borrower" in the other Loan Documents; however this does not modify the unambiguous defined term "Borrower" in the Reverse Mortgage.

---

[8] *See Citicorp Real Estate, Inc. v. Ameripalms 6B GP, Inc*., 633 So. 2d 47, 49 (Fla. 3d DCA 1994). ("[D]ocuments executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally [read] together."; *In re Alford*, 403 B.R. 123, 132 (Bankr. M.D. Fla. 2009) ("Loan Documents must be interpreted as a whole."); *MV Ins. Consultants v. NAFH Nat. Bank*, 87 So.3d 96, 99 (Fla. 3d DCA 2012) (construing "all of the relevant loan documents as a single contract" to determine the parties' intent).

Second, I am bound by the holding of the Florida Third District Court of Appeal in *Smith v. Reverse Mortgage Solutions,* 200 So. 3d 221 (Fla. 3d DCA 2016). In *Smith*, the Third DCA held that a person may be "the borrower" for purposes of the rights and obligations under a reverse mortgage even if the person is not the actual borrower under the loan. "Based on the plain and unambiguous language of the mortgage- which was executed by **both** Mr. and Mrs. Smith - (i) both Mr. and Mrs. Smith were treated as the "Borrower" under the mortgage, and (ii) **each** borrower is protected from the foreclosure of the mortgage until both borrowers die." *Id. at 226* (emphasis in the original). *See also Edwards v. Reverse Mortgage Solutions, Inc.,* 187 So.3d 895 (Fla. 3d DCA 2016)[9]. The *Smith* court did not mention, let alone consider, the statutory rules cited by RMS, notwithstanding that the Third DCA has applied such rules of construction in its own decisions.[10] *See, e.g., MV Insurance Consultants, LLC v. NAFH National Bank,* 87 So. 3d 96 (Fla. 3rd DCA 2012). Because there is no contrary law in Florida, I must follow the *Smith* holding.[11] *Veale v. Citibank, F.S.B*., 85 F.3d 577, 580 (11th Cir.1996) (When interpreting state law, "federal courts are bound by the rulings of the state's highest court. . . . If the state's highest court has not ruled on the issue, a federal court must look to the intermediate state appellate courts.") *Id.* (citations omitted).

RMS argues that *Smith* and *Edwards* are distinguishable because the party seeking to be recognized as the "Borrower" under the reverse mortgage in each case was the borrower's widow. RMS argues that the Third DCA in *Smith* reversed the trial court because the surviving party was the spouse of the decedent and "federal law relating to reverse mortgages defined the

---

[9] *Edwards* followed *Smith* without much analysis.

[10] *But see, Smith* (Shepherd, J., dissenting).

[11] The only other published opinion from a Florida court on this issue is *Nationstar Mortgage Co. v. Levine*, 216 So. 3d 711 (Fla. 4th DCA 2017). In that case, the court held that the reverse mortgage "contained conflicting indications as to [the spouse's] status as a borrower…where parts of the reverse mortgage seemed to define [spouse] as a 'borrower,' while the undefined term 'non-borrowing spouse' printed below her signature line reasonably suggested otherwise." Thus, no court in Florida has issued a decision contrary to the decision in *Smith.*

term "homeowner" as including the homeowner's spouse." However, that observation was a third alternative ground upon which the Third DCA reversed the lower court. Thus, because the operative language considered by the *Smith* court is identical to the language in the Reverse Mortgage, I am bound to follow its holding.[12]

Having found the language of the Reverse Mortgage is not ambiguous and that *Smith* therefore controls, I do not need to look past the four corners of the document. Nonetheless, it is instructive to review the law in effect at the time the Reverse Mortgage was executed in 2008. The version of the relevant regulation in effect at the time the Reverse Mortgage was executed - 24 CFR 206.27(c)(1) - stated that reverse mortgages would become due and payable "if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor . . .". 24 CFR 206.27(c)(1) was changed for mortgages executed on and after August 4, 2014, and now the word "mortgagor" in the regulation has been, in each instance, changed to "borrower". However, the Reverse Mortgage is subject to the 2008 version of the CFR. The only way the Reverse Mortgage can comply with the applicable law is to read the Reverse Mortgage as it is written, that is, the word "Borrower" applies to both mortgagors - the Debtor and her mother.[13]

Equally instructive is the language of ML 1997-15, referenced by RMS in its Memorandum of Law.[14] The text of ML 1997-15 that immediately follows the language quoted

---

[12] RMS' other argument, that Olga Nunez signed the Reverse Mortgage as Borrower and the Debtor as Remainderman, is not accurate. As already discussed, the Debtor and her mother both signed as Borrower (since neither was independently identified as such on their respective signature lines) with the Debtor's signature also including her status as Remainderman.

[13] I am not suggesting that, due to the change in the CFR, the holding in this opinion is inapplicable to reverse mortgages executed after August 4, 2014. Indeed, it appears more likely that the CFR has been changed so that it matches the verbiage used in the form reverse mortgages, but does not alter the survival rights of a mortgagor/borrower for purposes of the mortgage, to remain in his or her homestead. Nonetheless, it would be simpler for the applicable regulators to pick some other term in the forms and in the regulations to avoid this type of conflict.

[14] *See supra* note 5.

in footnote 5 of this opinion states "[a] holder of a future interest does not execute the note or loan agreement and does not have the rights to loan proceeds of other mortgagors." In other words, the mortgagor - "borrower" for mortgage purposes only - cannot claim additional funds under any note executed in connection with a reverse mortgage, to the extent the note has not been fully funded, notwithstanding that the mortgagor is called the "borrower" under the reverse mortgage. But the mortgagor does not lose his or her home so long as the mortgagor complies with the covenants of the reverse mortgage, to which terms he or she has subjected himself or herself as a "borrower" under the reverse mortgage.[15]

The United States Supreme Court held in *Johnson v. Home State Bank,* 501 U.S. 78 (1991) that a debtor may treat a mortgage encumbering property of the debtor in a chapter 13 plan even if the debtor has no *in personam* liability because the secured lender has a claim against property of the debtor. There is no dispute that RMS has a claim against property of the Debtor, even if the Debtor does not have any *in personam* liability[16],[17] and even though the Debtor was not eligible at the time the Loan Documents were signed to be a borrower under the applicable reverse mortgage regulations.

Reverse mortgages were clearly designed to assist elderly borrowers but that laudable purpose does not override rules of construction or the Bankruptcy Code. Because the Debtor is the Borrower as defined in the Reverse Mortgage, she has the rights and the obligations of the "Borrower" with respect to the Reverse Mortgage. Consequently, the objection of RMS to

---

[15] It appears that Mrs. Nunez did not take the full amount available to her under the Adjustable Rate Note that she signed as one of the Loan Documents. Nothing in this opinion is intended to suggest that the Debtor has any rights under the other Loan Documents, especially not the right to seek additional funds. However, the Debtor <u>does</u> have the right to cure the only default under the Reverse Mortgage – the non-payment of the taxes and insurance.
[16] Indeed, even Mrs. Nunez did not have *in personam* liability under the Loan Documents.
[17] Several courts, including this court in *In re Gray*, 530 B.R. 501 (Bankr. S.D.Fla. 2015), have held that even a party that is not a borrower under a reverse mortgage loan has the right to treat, and in *Gray*, even to modify, the reverse mortgage.

confirmation is OVERRULED.  As the Borrower, the Debtor is entitled to maintain the Reverse Mortgage by curing the defaults relating to taxes and insurance.

# # #

Copies furnished to:
Laila Gonzalez, Esq.

     Attorney Gonzalez is directed to serve a copy of this Order upon all interested parties and file a Certificate of Service with the Clerk of the Court.