UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:  
Aleida C. Nunez,  
   Debtor.  
_____/

CASE NO.: 17-21018-LMI  
CHAPTER 13

## MOTION FOR RECONSIDERATION OF ORDER OVERRULING OBJECTION TO CONFIRMATION BY REVERSE MORTGAGE SOLUTIONS INC.

**COMES NOW**, REVERSE MORTGAGE SOLUTIONS, INC. ("Secured Creditor"), by and through undersigned counsel, hereby files its Motion for Reconsideration of Order Overruling Objection to Confirmation by Reverse Mortgage Solutions, Inc. (ECF #59) ("Order") in support thereof, states as follows:

### Statement of Facts

Secured Creditor holds a security interest in the real property located at 9940 SW 155 Avenue, Miami, FL 33196 ("Property"), by virtue of a Home Equity Conversion Mortgage ("Mortgage"), executed on June 24, 2008, and recorded on July 14, 2008, in Book 26476, at Page 3178, of the Public Records of Miami-Dade County, Florida. The Mortgage was executed by Ms. Olga Nunez and her daughter, Aleida C Nunez ("Debtor") in favor of World Alliance Financial Corp. for the property listed above. That same day, Olga Nunez ("Borrower") also executed both a Home Equity Conversion Note ("Note") and Home Equity Conversion Loan Agreement ("Loan Agreement") in favor of World Alliance Financial Corp.

Secured Creditor filed a Complaint to foreclose the Reverse Mortgage on September 2, 2015, due to a default on the Note by virtue of the borrower's failure to maintain the taxes and insurance for the property. Borrower died on June 23, 2016, and the Complaint was later amended to include the death of Borrower as an additional ground for default.

On August 30, 2017, Debtor filed this Chapter 13 bankruptcy case. The Debtor's Chapter 13 plan ("Plan") proposed to cure the taxes and insurance default (ECF #7). On October 16, 2017, Secured Creditor filed its Objection to Confirmation (ECF #19). Secured Creditor's Objection to Confirmation was overruled (ECF #59).

## Legal Standard

Secured Creditor seeks reconsideration of the Memorandum Opinion and Order Overruling Objection to Confirmation pursuant to Rule 9023 of the Federal Rule of Bankruptcy Procedure. Rule 9023 of the Federal Rule of Bankruptcy Procedure incorporates Rule 59 of the Federal Rules of Civil Procedure. A court may grant a Rule 59(e) Motion to Alter or Amend the Judgment on four grounds: (1) the judgment is based upon manifest errors of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) amendment is necessary to prevent manifest injustice; or (4) there is an intervening change in the controlling law. Secured Creditor seeks reconsideration based on Rule 59(e)(1).

## Memorandum of Law

**I.     The *Smith* case is Not Controlling.**

The Order entered at ECF #50 reads in part, "I am bound by the holding of the Florida Third District Court of Appeal in *Smith v. Reverse Mortgage Solutions*, 200 So. 3d 221 (Fla. 3d DCA 2016)." Secured Creditor believes this statement is an error of law. There are material differences of fact in this case and the *Smith* case. When there are material differences of fact, the case law is not controlling but merely persuasive.[1]

The facts of this case are distinguishable from the facts of the *Smith* case. In *Smith,* the appellant Celia Smith signed a reverse mortgage with her husband, Kenneth Smith.  *Smith,* 200

---

[1] *Black's Law Dictionary* 620 defines material fact as one that is significant or essential to the issue or matter at hand.

So. 3d at 223 (Fla. 3d DCA 2016). The mortgage encumbered the property "where Mr. and Mrs. Smith lived together as their principal residence." *Id.* Mrs. Smith did not sign the promissory note. *Id.* at 222. Upon the death of Mr. Smith, the appellee accelerated the debt because the sole borrower had passed away. *Id.* at 223. In concluding that acceleration was improper because Mrs. Smith was a co-borrower under the mortgage, the Third District Court of Appeal focused on the language in the mortgage identifying Mr. Smith as "a married man." *Id.* at 226. Specifically, it noted that the federal law relating to reverse mortgages defined the term "homeowner" as including the homeowner's spouse. *Id.* (emphasis supplied). The Third District Court of Appeal felt "compelled to construe a contract consistent with specific statutes that regulate and govern the contract." *Id.* at 227 (citations omitted).

Similarly, in *Edwards,* the appellant Johnnie Mae Edwards signed a reverse mortgage with her husband, Willie Edwards. *Edwards*, 187 So. 3d at 896. Mrs. Edwards did not sign the promissory note. *Id.* Upon the death of Mr. Edwards, the appellee accelerated the debt. *Id.* The lower court found in favor of the appellee because it reasoned Mr. Edwards was the only borrower. *Id.* The Third District Court of Appeal reversed because it found Ms. Edwards to be a co-borrower as the surviving spouse. *Id.* In reaching that determination, it noted that, as in *Smith,* this holding was consistent with the federal law defining "homeowner" as including the homeowner's spouse. *Id.* at 879 (emphasis supplied; citations omitted).

The instant case, by contrast, does not concern the surviving spouse of Olga Nunez. The Mortgage states that Olga Nunez is a single woman and Debtor, her daughter, is a single woman. Moreover, Debtor was too young to qualify for a reverse mortgage and did not meet the title requirements to be a Borrower. Since Debtor is not a spouse of the Borrower, the federal law defining "homeowner" and including the homeowner's spouse would not protect Debtor. As such,

Olga Nunez and Debtor were not married, did not own the property in entirety, and the other factors employed in *Smith* and *Edwards* are wholly inapplicable here.

The instant case at bar is further distinguishable from *Smith* and *Edwards* because the signature block in the Mortgage confirms that Debtor signed in her capacity as "Remainderman". In contrast, in *Smith* and *Edwards,* the Court relied upon the fact the non-borrower spouse executed the last page in the reverse mortgage as a "Borrower."

In *Reverse Mortgage Solutions, Inc. v. Eady,* 01-2014-CA-004485 (Fla. 8th Circ. Ct. 2017), the Court considered the multiple closing documents to establish the Defendant was not a "borrower" for purposes of Paragraph 9 of the Mortgage as well as the fact the Defendant was not even qualified to be considered a borrower under the requirements for qualification at the time the mortgage was executed.

Similar to *Eady,* the Debtor here cannot be considered a borrower as she was not eligible for a reverse mortgage at the time the Note and Mortgage were executed. Each borrower must be at least sixty-two (62) years of age at the time of execution of the mortgage documents. Upon information and belief, the Debtor was only approximately 56 years of age at the time of execution of the mortgage. *See* 24 C.F.R. §206.33.

A similar analysis was taken by the Fourth District Court of appeals in *Nationstar Mortgage Company d/b/a Champion Mortgage Company v. Levine*, 216 So. 3d 711 (Fla. 4th DCA 2017), in which the appellate court reversed and remanded the trial court's summary judgment order entered in favor of the defendant due to a patent ambiguity in the contract. In *Levine,* Mr. Levine executed an adjustable-rate home equity conversion note in favor of the lender. *Id.* at 713. Mr. Levine and Mrs. Levine both executed the adjustable-rate home equity conversion mortgage. *Id.* The beginning of the reverse mortgage contained language that indicated, "[t]he mortgagor is

Julian C. Levine, **joined by his wife, Mary E. Levine** … ("**Borrower**")." *Id.* The bottom of the reverse mortgage contained two signature lines in the borrower section, however, underneath Mrs. Levine's signature line contained the pre-printed text, "Mary E. Levine**, Non-Borrowing Spouse**." *Id.* A foreclosure action was commenced by the lender after the death of Mr. Levine, and Mrs. Levine sought summary judgment based upon the argument she executed the mortgage as a "Borrower." *Id.* at 714. The appellate court reversed the summary judgment order and remanded the case back to the trial court due to the fact that although Mrs. Levine's name appeared on the first page of the mortgage next to the word "Borrower," there was a genuine issue of material fact as to whether she was indeed a "borrower" as defined in the mortgage due to the specific identifiable signature as a "non-borrowing spouse." *Id* at 716.

*Edwards* was required to follow *Smith* because the two cases had the same exact factual scenario. The Court in this case is not required to follow *Smith* due to the many **material** factual differences. One appellate panel cannot, as a rule, overrule another District Court of Appeals. But the Fourth District Court of Appeal, when confronted with a slightly different factual scenario, held that an evidentiary hearing was appropriate. *Id*.

Finally, and in the alternative, this Court should not apply *Smith* to the facts of this case because there are persuasive indications that the Florida Supreme Court would decide the issue differently. The federal courts are not bound to follow decisions by the state intermediate appellate courts when "there is some persuasive indication that the highest court of the state would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). As noted above, the facts of this case more closely track with the Fourth District Court of Appeals' decision in *Levine* than the facts of *Smith* and *Edwards* because there is conflicting evidence with regard to what capacity Debtor executed the Mortgage—namely, a signature block indicating that she

executed the Mortgage as a "Remainderman," and not as a "Borrower." The *Levine* decision properly applied longstanding Florida law to conclude that the conflicting evidence constituted a patent ambiguity from the face of the reverse mortgage, which meant that extrinsic evidence needed to be considered in order to interpret the contract. 216 So. 3d at 717. Given the application of longstanding Florida law and the similarities of the facts between this case and *Levine*, there are "persuasive indication[s]" that the Florida Supreme Court would apply the reasoning of *Levine* to this case, rather than *Smith* or *Edwards*. *Toto*, 311 F.3d at 1080.

**II.     An Evidentiary Hearing is appropriate in this case**

Not only are the material facts in the *Smith* case distinguishable, a Loan Agreement was not introduced in the *Smith* case, and the Court found the note to be irrelevant because plaintiff was proceeding *in rem*. Here, the loan agreement has been introduced in evidence and the Debtor's actions affect the note as well. Therefore, the entire loan transaction is at issue here, not just the mortgage, and the documents should be read together.  As the *Levine* Court correctly held, "the contract may be properly construed only after a consideration under which it was made and the meaning ascribed by the parties to its ambiguous language. The parties must therefore be afforded the opportunity to offer proof, not merely by affidavit or argument, but on a trial of the action." 216 So. 3d at 717.

Applied specifically in the mortgage context, "the rule is that where other instruments are executed contemporaneously with a mortgage and are part of the same transaction, a mortgage may be modified by all other instruments and all the documents are to be read together to determine and give effect to the intention of the parties." *Boyette. V. Carden*, 347 So. 2d 759, 761 (Fla. 1st DCA 1977); *see Graham v. Fitts*, 43 So. 512 (Fla. 1907) ("Where a note evidencing a debt and a

mortgage to secure its payment are executed at the same time in one transaction, and the mortgage refers to the note, they should be considered together in determining their meaning and effect.").

To determine the parties' intent in the instant case, the Court must also construe together all the loan documents executed by the parties at the same time on the same transaction. Here, the parties executed (1) a Note defining "Borrower" as Olga Nunez—and only Olga Nunez signed the document; (2) a Loan Application completed and executed by Olga Nunez alone; the "Co-Borrower" sections of the Loan application were blank; (3) a Mortgage where Debtor signed as "Remainderman"; (4) a Loan Agreement defining "Borrower" as Olga Nunez—and only Olga Nunez signed the documents.

These documents must therefore be considered together to determine their meaning and effect. *See*, *e.g.*, *Sardon Found.*, 852 So. 2d at 420 (concluding the trial court erred in failing to consider the terms of an additional agreement, along with the mortgage and note, to ascertain the intentions of the parties to the transaction); *Dodge City, Inc. v. Byrne*, 693 So. 2d 1033, 1034 (Fla. 2d DCA 1997) (holding that trial court erred in failing to consider "several documents executed simultaneously with the retail installment contract"). Reading these documents together and reading the acceleration provision in context, the parties' intent is manifest: Olga Nunez was the only "Borrower," and the entire loan became due and payable upon the death of Olga Nunez.

**III.     24 C.F.R. §206 is designed to speak to the requirements for HUD's insurance benefits and is not to be construed for purposes of interpreting the contractual agreement between parties.**

The court based its decision, in part, on the language of an older version of 24 C.F.R. § 206.27(c)(1). The opinion reads in part, "[t]he only way the Reverse mortgage can comply with applicable law is to read the Reverse Mortgage as it is written, that is, the word "Borrower" applies to both mortgagors…" However, 24 C.F.R. § 206 is labeled "Home Equity Conversion Mortgage

Insurance." It is designed to speak to the requirements for a reverse mortgage loan to receive the Secretary of Housing and Urban Development's (HUD) mortgage insurance. Even if 24 C.F.R. § 206.27 required that the mortgages read "if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor," the result should be that mortgages that do not read this way will not be insured. Lenders are independent of HUD's control, and the terms of the insurance securing the mortgage do not affect the terms of the underlying mortgage. *See Estate of Jones v. Live Well Fin., Inc.*, Case No. 1:17-cv-3105, 2017 WL 4176661, at *4 (N.D. Ga. Sept. 20, 2017) ("[W]hether the reverse mortgage here is insurable by HUD is not at issue. Instead, the enforceability of the terms of the Reverse Mortgage are at issue.").[2]

Debtor signed the Mortgage as a "Remainderman" because she was a holder of the future interest to the property owned by her mother, and therefore required to sign the Mortgage to effectively consent to a lien being placed on the property. HUD's Mortgagee Letter 1997-15 states in relevant part that:

> Regulatory changes permit mortgages to be insured and remain in force even if no eligible mortgagor has any interest in the property greater than a life estate. If an eligible mortgagor holds only a life estate when the mortgage is executed, **all holders of any future interest in the property (remainder or reversion) will also be required to execute the mortgage** to ensure that the mortgage is secured by a fee simple interest. **A holder of a future interest does not execute the note or loan agreement and does not have the rights to loan proceeds of other mortgagors.**

See ML 1997-15, ¶ 6 (emphasis added). Thus, it is clear that the parties intended Debtor to execute the Mortgage not as a "Borrower," but solely to encumber her remainder interest in the Property to the lien of the Mortgage and thereby ensure that the Mortgage was secured by a fee simple

---

[2] *See also id.* ("Even if the Reverse Mortgage is uninsurable under [federal law], the Defendant still has the right to enforce the terms of the agreement."); *Fed. Nat'l Mortg. Ass'n v. Takas*, No. 2:17-cv-204, 2017 WL 3016785, at *5 (D. Utah July 14, 2017) (concluding that federal law "is inapplicable to the validity or enforceability of [the borrower's] [r]everse [m]ortgage").

interest, consistent with the requirements applicable to the loan under HUD's Mortgagee Letter 1997-15.

## **CONCLUSION**

The Court's reliance upon the court rulings in *Smith* and *Edwards* is misplaced. In these cases, the Defendants (surviving spouses of the individuals who signed a reverse mortgage), executed the mortgage as a "Borrower" and were required to execute the mortgage documents as a spouse of the borrower in accordance with Florida Homestead Provisions and those Courts construed that the non-borrowing spouses were protected under Congress' expanded definition of a homeowner, which expanded to include the spouse of a homeowner under 12 U.S.C. § 1715z-20(j). Additionally, an evidentiary hearing should be held to determine the intention of the parties. Lastly, the Court's argument regarding 24 C.F.R. § 206.27 is mistaken, as this chapter of the Code of Federal Regulations is intended to provide standards for the insurability of reverse mortgages and is not used for the purposes of determining the definition of "borrower." The lenders are independent of HUD's control and the contracts should be enforceable, whether or not the mortgage document meets the insurability requirements.

**WHEREFORE,** Creditor respectfully requests entry of an order Granting Secured Creditor's Motion for Reconsideration and allow parties to schedule an evidentiary hearing, and for such other and further relief as the Court deems just and proper.

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909

By:/s/April Harriott
April Harriott, Esq.
Florida Bar No. 37547
Service Email: aharriott@rasflaw.com

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via electronic transmission (CM/ECF) and/or United States first class mail postage prepaid to the Attached Mailing List this 11th day of April, 2018.

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909


By:/s/April Harriott
April Harriott, Esq.
Florida Bar No. 37547
Service Email: aharriott@rasflaw.com

Mailing List

GIANNY BLANCO
10647 N KENDALL DR.
MIAMI, FL  33176

ALEIDA C. NUNEZ
9940 SW 155TH AVENUE
MIAMI, FL  33196

NANCY K. NEIDICH
POB 279806
MIRAMAR, FL  33027

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE.
SUITE 1204
MIAMI, FL  33130