# ATTACHMENT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-22204-WILLIAMS

REVERSE MORTGAGE SOLUTIONS, INC.,

        Appellant,

vs.

ALEIDA C. NUNEZ,

        Appellee.
_____/

## ORDER

**THIS MATTER** is before the Court on Appellee Aleida Nunez' motion for rehearing. (DE 31). Appellant Reverse Mortgage Solutions, Inc. ("RMS") filed a response (DE 33) and Appellee filed a reply (DE 36). Upon review of the motion and the record, it is **ORDERED AND ADJUDGED** that Appellee's motion for rehearing (DE 31) is **DENIED**.

**I.    BACKGROUND**[1]

This matter began with Appellant RMS' appeal of the Bankruptcy Court's decision that Appellee/Debtor ("Debtor") is a "borrower" under a reverse mortgage issued by RMS (the "Reverse Mortgage" or "Security Instrument"). Upon review of the record and applicable law, this Court found that the Bankruptcy Court erred and that the Debtor did not constitute a "borrower" under the subject Reverse Mortgage. (DE 28). Appellee now moves for rehearing, arguing that the Court's findings have been "superseded by the intervening decision of the *Palmero* court, *en banc*, withdrawing its 2018 opinion." (DE 31) (citing *OneWest Bank, FSB v. Palmero*, 283 So. 3d 346 (Fla. 3d DCA 2019)).

---

[1] The facts underlying this matter are set forth in the Court's Order reversing and remanding this matter to Bankruptcy Court. (DE 28).

## II. LEGAL STANDARD

"Bankruptcy Rule 8022 (formerly 8015) is silent regarding the standard for granting a rehearing motion. Courts in the Eleventh Circuit have applied the same standard to motions for rehearing under Bankruptcy Rule 8015 as is applied to motions for reconsideration under Federal Rule of Civil Procedure 59(e)." *Tucker v. Mukamal*, No. 13-MC-23425, 2015 WL 10986356, at *1 (S.D. Fla. Feb. 11, 2015), *aff'd,* 616 F. App'x 969 (11th Cir. 2015) (internal quotations omitted). The only grounds for granting a motion for reconsideration under Rule 59 of the Federal Rules of Civil Procedure are "newly discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (quoting *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)). Moreover, "the moving party will not prevail on a Rule 59(e) motion that introduces previously unsubmitted evidence absent a showing that the evidence was unavailable at the time of the judgment." *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (citing *Mays v. United States Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997)).

## III. DISCUSSION

Appellee's motion for rehearing is primarily based on the Third District Court of Appeal of Florida withdrawing its panel opinion in *OneWest Bank, FSB v. Palmero*, 2018 WL 1832326 (Fla. 3d DCA 2018) and substituting it with the findings set forth in *OneWest Bank, FSB v. Palmero*, 283 So. 3d 346 (Fla. 3d DCA 2019). Upon review of the

2

superseding opinion in *Palmero*, the Court finds that a rehearing or reconsideration of this Court's prior order (DE 28) would be futile.

### A. Superseding Opinion in *OneWest Bank, FSB. v. Palmero*

The relevant factual background in *Palmero* is as follows. In August 2006, spouses Mr. and Mrs. Palmero completed, as co-borrowers, a loan application for an adjustable rate line of credit to be secured by a home equity conversion mortgage on their primary residence. *See OneWest Bank, FSB v. Palmero*, 283 So. 3d 346, 347 (Fla. 3d DCA 2019). Thereafter, Mr. Palmero "signed and executed, by himself (i) a second, form residential loan application with the same lender, wherein [Mr. Palmero] stated that he held a life estate in the Palmeros' primary residence and that he was the only borrower on the loan; (ii) a home equity conversion loan agreement, which defined [Mr. Palmero] as the borrower; and (iii) an adjustable rate note, which identified [Mr. Palmero] as the borrower." *Id.* To secure the note, both Mr. and Mrs. Palmero "signed and executed a reverse mortgage encumbering their primary residence." *Id.*

The reverse mortgage "define[d] the 'Borrower' as '[t]he mortgagor,' and further describe[d] the 'Borrower' as 'Roberto Palmero, a married man reserving a life estate unto himself with the remainderman [sic] to Luisa Palmero, his wife, Idania Palmero, a single woman, and Rene Palmero, a single man.'" *Id.* at 348. At the end of the reverse mortgage, "immediately before the signature block, the document states: 'BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument . . . . Below this statement, Roberto and Mrs. Palmero placed their signatures on the separate lines above their pre-printed names as 'Borrower.'" *Id.* Also attached to the mortgage was "a 'Signature Exhibit,' where Mrs. Palmero and the adult children,

3

Idania and Rene Palmero, placed their signatures on the separate lines above their pre-printed names 'as remainderman.'" *Id.* at 348 n.4.

The primary issue in *Palmero* was whether the lower court erred in determining that Mrs. Palmero was not a "co-borrower" under the reverse mortgage. Although initially the *Palmero* court applied the doctrine of mutual construction, in its superseding opinion, it determined that where, "as a matter of law, the 'plain and unambiguous language of the mortgage' treats both signing spouses as the 'Borrower,' there is no cause to utilize the doctrine of mutual construction to look beyond the face of the mortgage in order to determine and give effect to the parties' intent." *Id.* at 352 (internal citations omitted). The doctrine of mutual construction provides that "two documents executed by the same parties as part of a single transaction regarding the same subject matter must be read and construed together." 37 Fla. Jur 2d Mortgages, Etc. § 94; *see also Sims v. New Falls Corp.*, 37 So. 3d 358, 361 (Fla. 3d DCA 2010). The doctrine applies to mortgages and the notes the mortgages secure. *See id.* ("When other instruments are executed contemporaneously with a mortgage and are part of the same transaction, the mortgage may be modified by the other instruments and all the documents are to be read together to determine and give effect to the intention of the parties.").

The court in *Palmero* emphasized that the doctrine of mutual construction is applicable *"only* to assist in clarifying an ambiguity in a document." *Palmero*, 283 So. 3d at 352. And because the court found that "Mrs. Palmero was plainly and unequivocally characterized by the [reverse mortgage's] drafter as 'Borrower', it did not apply the doctrine of mutual construction. *Id.* at 353. Accordingly, even though the "other documents omit[ted] reference to Mrs. Palmero, or might [have] characterize[d] her as

4

someone other than a borrower," the court determined that under the reverse mortgage, she was a borrower. *Id.*

## B. The Court's Application of *OneWest Bank, FSB. v. Palmero*

Here, the Court considered, alongside other cases, the withdrawn *Palmero* opinion in determining that under Florida law, it must consider all the loan transaction documents together to resolve whether the Debtor was a borrower under the Reverse Mortgage. The *Palmero* opinion does not suggest that applying the doctrine of mutual construction is contrary to Florida law. Rather, it concludes that where the terms of the mortgage are unambiguous, there is no need to apply the doctrine. *See id. at* 352 ("Where though, as here, this Court has unqualifiedly determined that, as a matter of law, the 'plain and unambiguous language of the mortgage' treats both signing spouses as the 'Borrower,' there is no cause to utilize the mutual construction doctrine . . . ") (internal citations omitted). Because the facts in this record do not establish that "as a matter of law, the plain and unambiguous language of the mortgage" treats both Debtor and her mother as "borrower", the Court still finds its appropriate to consider all the loan transaction documents together.

To be clear, the *Palmero* court found that Mrs. Palmero "was plainly and unequivocally characterized by the document's drafter as 'Borrower.'" *Id.* at 353. "At the end of the mortgage, immediately before the signature block, the document states: 'BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed and recorded with it.' Below this statement, Roberto and Mrs. Palmero placed their signatures on the separate lines above

5

their pre-printed names as 'Borrower.'"[2] *Id.* The court also found that part of the reverse mortgage could only be accurate if both Mr. and Mrs. Palmero were borrowers under the document. *See id.* at 348 ("this covenant would be accurate *only* if *both* Roberto and Mrs. Palmero were the 'Borrower').

Here, the signature page contains similar language to that in *Palmero*, but identifies Debtor as remainderman, rather than as "borrower". Specifically, the signature block of the Security Instrument reads as follows:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: [signatures]

Signature:

[signature] OLGA NUNEZ

[signature] ALEIDA C NUNEZ, AS REMAINDERMAN

As the Court noted in its Order, the Security Instrument "makes clear that the reason the Debtor signed the Security Instrument was because of her status as remainderman. Both times Debtor is directly identified in the Security Instrument her status as remainderman

---

[2] Although not clear from the *Palmero* court's description of the signature block, a review of the Appellee's answer brief shows that in addition to Mrs. Palmero's name, the word "Borrower" was preprinted below the line she was required to sign. *See* Answer Brief for Appellee at 6 OneWest Bank, FSB v. Palmero, 283 So. 3d 346 (Fla. 3d DCA 2019) No. 3D14-3114, 2016 WL 9558841.

6

is explicitly set out." (DE 28). Under federal law, if "Non-Borrowing Spouses or non-borrowing owners of [a] property will continue to hold title to the property which serves as collateral for the [Home Equity Conversion Mortgage], such Non-Borrowing Spouses and non-borrowing owners must sign the mortgage as mortgagors, evidencing their commitment of the property as security for the mortgage." 24 C.F.R. § 206.35. Given that "[a] mortgagor is not required to be a borrower", it is unclear whether Debtor signed the Security Instrument because of her future interest as remainderman, or because she is a "borrower". *Id.*

As the Court cannot conclude that it is plain and unambiguous that the Security Instrument treats Debtor as a "borrower", it is still appropriate to apply the doctrine of mutual construction, notwithstanding the superseding opinion in *Palmero*. And such analysis is consistent with the Court's initial consideration of all the transaction documents, which showed that Debtor was not a "borrower." The Court further notes that where the *Palmero* court found certain covenants would only be accurate if Mrs. Palmero was a borrower, here, "if the Security Instrument is interpreted out of context with the larger transaction, . . . the Security Instrument would nullify the terms of the Note." (DE 28).

Moreover, and as Appellant notes, the Court relied on more than *Palmero* in reaching its decision. For example, the Court cited to *Graham v. Fitts*, where the Florida Supreme Court found that where "[t]he note and mortgage were executed at the same time in one transaction relating to the same subject, and the mortgage refers to the note . . . they should be considered together in determining their meaning and effect." *Graham v. Fitts*, 53 Fla. 1046, 1052, 43 So. 512, 513–14 (1907); *see also* 37 Fla. Jur 2d

Mortgages, Etc. § 94 ("The doctrine of mutual construction, by which two documents executed by the same parties as part of a single transaction regarding the same subject matter must be read and construed together, applies to mortgages and the notes they secure."). Here, Debtor's mother executed the Security Instrument on the same day that she executed the Note and Loan Agreement, neither of which were signed by Debtor. Further, the Security Instrument recognizes the existence of the Loan Agreement and Note and the duty to repay amounts advanced as "evidenced by Borrower's Note." As explained in the Court's Order, the Security Instrument secures "the repayment of the debt evidenced by the Note . . . up to a maximum principal amount of Five Hundred and Thirty-One Thousand and 00/100 Dollars ($531,000.00)" as well as other amounts due under the Security Instrument and "the performance of Borrower's covenants and agreements under [the] Security Instrument and the Note." (DE 28). Accordingly, the Court finds that it is still appropriate to consider all the loan transaction documents together to determine whether the Bankruptcy Court erred in holding that Debtor is a "borrower" under the Security Instrument. Therefore, the Court's analysis in its Order finding that the Bankruptcy court erred in holding that Debtor is a "borrower" remains unchanged.

### C. CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration (DE 31) is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 23rd day of January, 2020.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE