UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                    Case No.: 17-21018-LMI

Aleida C. Nunez,                                          Chapter 13

    Debtor.
_____/

**AMENDED MOTION TO HOLD CASE OPEN PENDING FLORIDA SUPREME COURT DECISION IN ONE WEST, FSB V. PALMERO AND APPROVING ATTORNEYS' FEES**

**COMES NOW** the Debtor, Aleida C. Nunez, by and through her undersigned counsel and moves this Honorable Court for an Order holding the instant case open pending the Supreme Court of Florida deciding the case of *One West Bank, FSB v. Palmero*, and as grounds therefore would show:

1. The Creditor filed a response to the Debtor's previous Motion filed on November 23, 2020. The purpose of the instant Amended Motion is to clarify the Debtor's position regarding same.

2. The District Court Order entered on January 23, 2020 on Page 7, states, "As the Court cannot conclude that it is plain and unambiguous that the Security Instrument treats Debtor as a "borrower", it is still appropriate to apply the doctrine of mutual construction, notwithstanding the superceding opinion in *Palmero*. The Court further notes that where the *Palmero* court found certain covenants would only be accurate if Mrs. Palmero was a borrower, here, "if the Security Instrument is interpreted out of context with the larger transaction, . . .the Security Instrument would nullify the terms of the Note." (DE 28)," *Id.* at Page 7.

3. The 11th Circuit dismissed the appeal brought by the Debtor in the instant case. The dismissal is located at DE#170.

4. Oral Argument is currently scheduled before the Supreme Court of Florida on December 9, 2020 on the case of *One West Bank, FSB v. Palmero*, 283 So. 3d 346 (Fla. 3d DCA 2019), which the Debtor believes would be determinative of the issue regarding the matter of

      ambiguity or lack thereof in the instant case with regard to the Debtor being identified as a Borrower and whether the determination of same can be made solely from the mortgage document as opposed to all of the documentation involved in the loan.

5. It appears that the District Court believed that the term "Borrower" was indeed ambiguous and that therefore the other documents executed simultaneously needed to be utilized in order to define the term "Borrower," As the District Court found the term "Borrower" to be ambiguous, then Parol evidence should be used to determine the Party's definition of the term "Borrower." Additionally, contract reformation is an equitable remedy that acts to correct an error not in the parties' agreement but in the writing that constitutes the embodiment of that agreement. It is designed to correct a defective or erroneous instrument so that it reflects the true terms of the agreement that the parties actually reached and, at its essence, allows a judge to reform a written document to match the parties' understanding. The doctrine has evolved such that if a document is to be reformed, it should reflect the true intention of the parties. Florida courts employ this equitable measure in order to preserve the sanctity of the contracting parties' negotiations and the spirit of the deal.

6. The Debtor has at all points in time been adamant that at the time the Reverse Mortgage was taken out on the property that she was told that the Reverse Mortgage would not come due during her lifetime.

7. Under Florida law, reformation of a written contract is appropriate when the contract fails to express the parties' true agreement because of mutual mistake or when one party acts inequitably or fraudulently and causes the counterparty to make a unilateral mistake. *See Smith v. Royal Automotive Group, Inc.*, 675 So. 2d 144, 150 (Fla. 5th DCA 1996); *Belitz v. Riebe*, 495 So. 2d 775, 776 (Fla. 5th DCA 1986) (explaining that "a court will reform a contract if it fails to express the parties' intentions because of fraud, mutual mistake, accident or inequitable conduct"); *Avers v. Thompson*, 536 So. 2d 1151, 1154 (Fla. 1st DCA

1988) (noting that "reformation is proper for unilateral mistake on one side of the transaction, and inequitable conduct on the other"); *Providence Square Assoc. v. Biancardi*, 507 So.2d 1366, 1369 (Fla. 1987) (clarifying that a court "has the power to reform a written instrument where, due to a mutual mistake, the instrument drawn does not accurately express the true intention or agreement of the parties to the instrument"); *Tri-County Produce Distr. Inc. v. Northeast Prod. Cr. Ass'n*, 160 So.2d 46, 50 (Fla. 1st DCA 1963) (same).

8. The Supreme Court of Florida has addressed this issue. In *Providence Square Association, Inc. v. Biancardi*, 507 So.2d 1366 (Fla. 1987), the Supreme Court of Florida, after an exhaustive search into the law of contract reformation, and affirming equitable powers to reform, explained why the law made for good Florida state policy: Notably, in reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.

9. A reformation relates back to the time the instrument was originally executed and simply corrects the document's language to read as it should have read all along. *Providence Square*, 507 So.2d at 1369-1371. *Providence Square* also instructed that parol evidence, such as oral statements that were made leading up to a writing, may be utilized to support the reformation: Indeed, the general rule in actions at law based on contracts and other written instruments is that ordinarily the writing itself must stand as the only exposition of the parties' intent. In a reformation action in equity, however, parol evidence is admissible for the purpose of demonstrating that the true intent of the parties was something other than that expressed in the written instrument. *Spear v. McDonald*, 67 So.2d 630 (Fla.1953); *Biggs v. Biggs*, 452 So.2d 129 (Fla. 2d DCA 1984); *Rowland v. Whitehead*, 375 So.2d 607 (Fla. 2d DCA 1979). *Providence Square*, 507 So.2d at 1371.

10. In reforming an instrument, Florida courts have no power to make a new contract. Rather, the rationale for reformation of an instrument is that the court sitting in equity does not alter the parties' agreement but allows a defective instrument to be corrected to reflect the true terms of the agreement that the parties actually reached. *Circle Mortg. Corp. v. Kline*, 645 So.2d 75 (Fla. 4th DCA 1994). Thus, equity decrees the reformation of a writing only when it is established that an agreement exists to which the writing may be made to conform and may not be used to supply an agreement that was never made or to supply material terms or provisions omitted by the parties. Therefore, when courts reform a contract, they must demonstrate that as a matter of equity it was the intent of each party to incorporate the changes. *Davis v. Hinson*, 67 So. 3d 1107 (Fla. 1st DCA 2011). Equitable reformation is essentially a fairness principle—parties to an agreement should be bound to the terms they agreed upon.

11. For instance, if a contract contains a latent ambiguity, extrinsic evidence may be admissible in furtherance of interpreting the contract properly. *See Fi-Evergreen Woods, LLC v. Robinson*, 135 So.3d 331, 336 (Fla. 5th DCA 2013). A latent ambiguity in a contract is not clear from the face of the contract but becomes clear through extrinsic evidence where contractual language is reasonably interpreted in two or more possible ways. *Prime Homes, Inc.*, 84 So.3d at 1152. "A latent ambiguity arises when a contract on its face appears clear and unambiguous, but fails to specify the rights or duties of the parties in certain situations." *Jenkins*, 913 So.2d at 52-53

12. A patent ambiguity, on the other hand, is an ambiguity on the face of the contract. *Prime Homes, Inc.*, 84 So.3d at 1152. Extrinsic evidence is typically disallowed to interpret a patent ambiguity in a contract because the court is not in the business of rewriting contracts. *Id*. However, even with a patent ambiguity, a court could allow parol evidence to explain the identity, capacity, or relationship of the parties since this evidence does not go to the interpretation or rewriting of the contract. *Id*. Another exception is that parol even may be

introduced to establish fraud in the procurement of a written contract. *Ton-Will Enterprises, Inc. v. T&J Losurdo, Inc.*, 440 So.2d 621, 622 (Fla. 2d DCA 1983).

13. In the instant case there was either a mistake or the Debtor was misled into entering into the Reverse Mortgage. The Debtor was on title to the property prior to the Reverse Mortgage. The people involved in convincing the Debtor and her mother to enter into the Reverse Mortgage assured both the Debtor and her mother that the Debtor would be able to live in the property during her lifetime without the mortgage coming due as long as the property remained the Debtor's principal residence.

14. The Debtor has incurred attorney's fees in bringing and prosecuting the instant motion.

**WHEREFORE**, the Debtor requests that this Court enter an Order holding open the instant case pending the decision of the Supreme Court of Florida in the case of *One West Bank, FSB v. Palmero* or in the alternative setting the matter for evidentiary hearing in order to determine whether the Debtor is a Borrower with regard to Reverse Mortgage Solutions or whether the Security Instrument would be void if the Debtor is not a "Borrower" and approving Debtor's Counsel's request for attorney's fees.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed this 25th day of November, 2020 along with the accompanying **Notice of Hearing**, to **Nancy K. Neidich, Trustee and all registered users of ECF** via NEF, **all creditors** in the attached matrix and **Debtor** in the instant case via regular mail.

*/s/Laila S. Gonzalez*
FREIRE & GONZALEZ, P.A.
Attorneys for Debtor
Edward Freire, Esq. FBN: 0813771
Laila S. Gonzalez, Esq. FBN: 0975291
Gianny Blanco, Esq., FBN: 0078080
10691 North Kendall Drive, Ste. 207
Miami, FL 33176
Tel: (305) 826-1774
Fax: (305) 826-1794
courtdoc@fgbkc.com